# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2618

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| Margarito Gomez Serena, Jr., | * | |
| also known as Margarito Rodriguez | * | |
| Serena, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 9, 2004

Filed: May 27, 2004

_____

Before MORRIS SHEPPARD ARNOLD, HANSEN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Margarito Gomez Serena, Jr. pleaded guilty to possession of firearms, possession of ammunition by a drug user, possession of stolen firearms, and possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. §§ 922(g) and (j) and 18 U.S.C. § 924(a). Pursuant to his plea agreement, Serena

reserved the right to appeal the district court's[1] order denying his motion to suppress evidence obtained after an alleged illegal detention. We affirm.

## I. *Background*

Officer Kyle Olson stopped Serena on April 30, 2002, in Fargo, North Dakota, because the tags on the vehicle that Serena was driving appeared to have expired. Officer Olson informed Serena of the apparent violation, and Serena responded that there was a temporary license tag in the rear window of the vehicle. Officer Olson confirmed the validity of the temporary tag.[2]

Officer Olson then asked Serena for identification and proof of insurance. Serena was unable to produce any identification. Officer Olson asked Serena his name, and Serena identified himself as Anthony Hernandez. Officer Olson became suspicious at this point, because the name Serena provided did not match the name "JAY-T," which was tattooed on the back of Serena's head.[3] Serena explained that he was unsure whether the vehicle had insurance because he had borrowed it from Horn that evening.

At this point, Officer Olson asked Serena to look into to the glove compartment for insurance verification. Olson then radioed for assistance because he suspected Serena was providing false information. Upon the arrival of Officer Richard Griffin, Officer Olson continued to question Serena. Officer Olson noticed that Serena was very nervous and was fidgeting with numerous papers in the vehicle. Olson also observed a shaving kit on the front passenger seat of the vehicle.

---

[1] The Honorable Rodney S. Webb, United States District Judge for the District of North Dakota.

[2] The temporary tag identified Steven Horn as the registered owner.

[3] Officer Olson noticed the tattoo while asking Serena for identification.

Officer Olson asked Serena to step back to the squad car, while he conducted a computer check on the validity of Serena's driver's license and telephoned Horn to confirm that Serena had permission to use the car. Serena agreed to accompany Officer Olson to his squad car. Serena appeared to be preparing to exit the vehicle when he suddenly put the vehicle in gear. Officer Olson, believing that Serena was trying to flee, reached through the open driver's side window to shut off the engine. The vehicle moved forward approximately one car length before Officer Olson succeeded in turning off the ignition.

Officers Olson and Griffin struggled with Serena. During this incident, Officer Olson struck Serena's left temple with his flashlight. After his forced removal from the car, Serena refused to comply with the officers' orders to get down on the ground. Olson, using a closed fist, hit Serena two to three times in the face; however, Serena continued to resist. Finally, Officer Griffin subdued Serena by spraying him with pepper spray. Once the officers got Serena on the ground, they radioed another unit for assistance. Officer Olson advised Serena that he was placing him under arrest for resisting a police officer.

Upon Officer Matt Sanders and Sergeant Dean Mueller's arrival, Serena was handcuffed. Officer Sanders read Serena his *Miranda* rights. According to the officers, Serena indicated that he understood his rights. Because of injuries incurred during the altercation, police summoned an ambulance for Serena. Just before being transported to MeritCare Hospital, Officer Griffin conducted a cursory search of Serena's person. Griffin discovered Serena's state-issued picture identification card. The name on the identification card did not match the name Serena had supplied to Officer Olson.

After Serena's arrest, police searched his vehicle. The shaving kit that Officer Olson had observed earlier contained two firearms, a round of ammunition, three

photographs, and a bag containing a white-powdery substance. The search also uncovered a Digitech scale and a pocket knife.

Serena appeals the district court's denial of his motion to suppress the evidence seized during the search of the vehicle. Serena urges that Officer Olson's detention beyond verifying the thirty-day temporary license tag–the reason for the stop– was unreasonable under the Fourth Amendment. Serena also argues that the detention was based on racial profiling.

## II. *Analysis*

"We review the district court's factual findings for clear error and its conclusion as to whether the search violated the Fourth Amendment de novo." *United States v. Martinez*, 78 F.3d 399, 401 (8th Cir. 1996). Serena concedes that because Officer Olson reasonably believed that the vehicle had expired tags, he was entitled to stop the car. *United States v. Peltier*, 217 F.3d 608, 610 (8th Cir. 2000). The issue is whether the subsequent detention was permissible under the Fourth Amendment.[4] A reasonable investigation of a justifiable traffic stop may include checking the driver's license and registration, asking the driver to step out of the vehicle, asking the driver to sit in the patrol car, and requesting the driver's destination and purpose. *United States v. Gregory*, 302 F.3d 805, 809 (8th Cir. 2002); *United States v. Ramos*, 42 F.3d 1160, 1163 (8th Cir. 1994). If Officer Olson's observations aroused reasonable suspicions, he was entitled to expand the scope of the stop and ask questions not directly related to the initial traffic stop. And, Serena's consent given in the course of such questioning was valid if it was given voluntarily. *United States v. Allegree*, 175 F.3d 648, 650 (8th Cir. 1999).

---

[4] Under *Terry v. Ohio*, 392 U.S. 1, 20 (1968), given the lawfulness of the initial stop, the question is whether the detention was "reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Cummins*, 920 F.2d 498, 502 (8th Cir. 1990).

The district court found that the officers acted reasonably during the traffic stop. As noted earlier, Serena contends that once Officer Olson observed the temporary license tag, the traffic stop should have concluded. In *United States v. Clayborn*, the defendant argued that an officer is unable to ask for a driver's license and registration after the reason for the initial traffic stop has concluded. 339 F.3d 700, 701 (8th Cir. 2003). The defendant in *Clayborn* had been pulled over for driving without license plates. The officer informed the defendant why he had been stopped and the defendant demonstrated that he had a temporary license tag on the vehicle's rear window. *Id.* After confirming the license tag, the officer then asked for the defendant's registration papers, insurance card, and driver's license. *Id.* Our Court reasoned that the officer's request for registration papers and identification was reasonable and the officer's action did not exceed those justified by the traffic stop. *Id.* at 702.

We find Officer Olson's brief inquiry of Serena reasonable under the circumstances. Upon stopping Serena for–apparently–expired tags, Officer Olson conducted a reasonable investigation. First, Officer Olson requested a driver's license, which Serena was unable to provide.[5] Also, Serena provided a name that did not match the name affixed to the temporary license tag in the rear window.[6] Second, Officer Olson suspected that Serena provided a false name because it did not match Serena's tattoo. An investigative stop can grow out of a traffic stop so long as the officer has reasonable suspicion of criminal activity to expand his investigation, even if his suspicions were unrelated to the traffic offense that served as the basis of the

---

[5] Under North Dakota law, a driver is required to carry a valid driver's license. N.D. Cent. Code §§ 39-06-01, 39-06-16.

[6] Before stopping the vehicle, Officer Olson ran a computer check on the license plates. He received information that the car was registered to Josh Teirnes, and not Steven Horn, the name identified on the temporary tag in the rear window.

stop. *United States v. Long*, 320 F.3d 795, 799–800 (8th Cir. 2003). Officer Olson's actions did not exceed that of a reasonable traffic stop investigation.

As to the search, we hold that it was a valid search incident to arrest. After feigning cooperation, Serena attempted to flee the scene and resisted the officers. Following Serena's arrest, the officers searched the vehicle and discovered the prohibited firearm. We conclude the district court did not err in denying Serena's motion to suppress.

Next, Serena argues that the evidence seized in the vehicle should be suppressed because the stop which lead to the discovery occurred as a result of racial profiling. In other words, Serena argues that Officer Olson had no more than a mere generalized suspicion of criminal activity based solely upon Serena's race when Olson prolonged the traffic stop. Specifically, Serena contends that he was detained because of his Hispanic descent,[7] his shaved head, and the tattoo across the back of his scalp.

We find this argument unpersuasive. The United States Supreme Court holds that a traffic stop is constitutional, no matter the officer's subjective intent, so long as the officer had probable cause to believe that a traffic violation occurred. *Whren v. United States*, 517 U.S. 806, 813 (1996). As noted above, and as Serena concedes, Officer Olson had a reasonable and articulable suspicion that a traffic violation had occurred. *United States v. Herrera Martinez*, 354 F.3d 932, 934 (8th Cir. 2004). Also, the officer based his additional detention of Serena upon reasonable suspicions that

---

[7] Serena also argues that Officer Olson unlawfully detained Serena because Olson recognized Serena as the brother of Jesus Serena, who Olson had encountered a week earlier. This argument is without merit. Officer Olson did not connect Serena with Jesus until after Serena's arrest. During the search of the vehicle incident to the arrest, a photo of Jesus was recovered and at that point Olson became aware of Serena's connection with Jesus.

developed during the stop. Serena has not shown that Officer Olson detained him solely on account of his race.

## III. *Conclusion*

For the foregoing reasons, we affirm the decision of the district court.

_____