# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-4066

———————

United States of America,

      Appellee,

v.

Oscar Berrera Sanchez,

      Appellant.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the Western
District of Missouri.

———————

Submitted: May 11, 2005
Filed: August 10, 2005

———————

Before LOKEN, Chief Judge, BEAM, and MELLOY, Circuit Judges.

———————

BEAM, Circuit Judge.

Oscar Berrera Sanchez appeals the district court's[1] denial of his motion to suppress the 9mm pistol that formed the basis of his prosecution. Sanchez entered a conditional plea of guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and was sentenced to a term of fifty-five months' imprisonment. We affirm.

———————

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable Sarah W. Hays, United States Magistrate Judge for the Western District of Missouri.

# I.    BACKGROUND

On July 5, 2003, at approximately 11:30 a.m., Trooper Seaton of the Missouri State Highway Patrol stopped a car with a Montana license plate for following too closely. Tara Hencz was driving and Sanchez was a front-seat passenger. After explaining the reason for the stop Seaton requested Hencz's license, which she provided, her hands visibly shaking. The two went back to Seaton's patrol car.

Once in the patrol car, Seaton asked Hencz where she was going and with whom she was traveling. Hencz replied that she was traveling to St. Louis to visit her aunt, Kathy, and that her passenger's name was Anthony. She could not provide Anthony's last name, however, nor could she provide a location or address where she was to meet her aunt. Seaton noticed that Hencz appeared very nervous and sat rigidly in his car. Hencz's voice was shaky and her pulse was noticeably heavy while answering his questions. When asked how long she had known her passenger, Hencz responded it had been about one year, and again denied knowing his last name. Hencz remained very nervous during the entire exchange and her pulse was visibly pounding in her lower abdomen.

Based upon these responses, Seaton became suspicious and contacted Corporal Greg Swartz, a canine handler with the Missouri State Highway Patrol for backup. Swartz arrived with his dog, Yote, within two to three minutes.

Seaton also approached Sanchez, the passenger, who initially produced a false Arizona identification card (ID) bearing the name "Antonio Lopez." Seaton and Swartz became suspicious of Sanchez's ID given the characteristics of the card. When questioned about the ID, Sanchez responded that he had been using it for about two years, but he avoided the direct question regarding whether it was fake. Seaton ran several computer checks on the ID to determine if it was fake, all of which came

up with nothing regarding the name on the ID. Seaton asked Sanchez where the two were going and Sanchez initially responded that they were visiting a friend, but then changed his response to Hencz's aunt. Sanchez claimed to have known Hencz for a couple of months. Swartz also asked Sanchez questions about Hencz and how long Sanchez had lived in Montana. Sanchez's responses were inconsistent with Hencz's answers.

Based on the computer checks that failed to confirm Sanchez's identity and the belief that the ID was fake, the conflicting stories recounted by Hencz and Sanchez, and the nervous demeanor of Hencz, both Seaton and Swartz suspected that Hencz and Sanchez were involved in criminal activity. Seaton issued a warning citation to Hencz for following too closely and told her that she was free to go.

As Hencz was walking away, Seaton called to her and asked her if he could ask her a few questions. Hencz acquiesced. Seaton told her that he was a bit suspicious based on their encounter and asked Hencz if she was aware of the drug problem in the United States. Hencz responded affirmatively. Seaton then asked Hencz if she was aware that people transported narcotics across the country every day in vehicles. Hencz responded that she did not know that. Again, during this entire exchange, Hencz remained visibly shaken and had goose bumps despite the fact that it was 100 degrees that day. Seaton then asked Hencz for permission to search her car. Hencz refused. Seaton ordered Sanchez out of the vehicle.

Swartz led Yote around the vehicle to conduct an exterior sniff. The dog search commenced at about 12:10 p.m. Yote alerted to the presence of narcotics in the trunk area of the car and Seaton opened the trunk, discovering large bundles of marijuana. Seaton and Swartz arrested Sanchez and Hencz. The entire encounter lasted about forty-five minutes.

Following the arrests, the vehicle was towed and Swartz and Seaton conducted an inventory search. They discovered three large bundles of marijuana weighing approximately thirty pounds each, a smaller package of marijuana on the back seat, a small amount of methamphetamine, and four rounds of 9mm ammunition. They also found a loaded 9mm pistol underneath the passenger seat.

After the inventory search, Seaton interviewed Henzc and she admitted that the car was loaded with marijuana by Sanchez and some of his friends. She stated that she was to be paid to drive the vehicle to St. Louis and that she and Sanchez had rehearsed a story in case they were stopped by the police. She also stated that she saw Sanchez with the gun and that it belonged to him. This firearm formed the basis for the instant charges, as Sanchez was a multiple-count felon.

## II.    DISCUSSION

We review the district court's factual findings for clear error, and its conclusion regarding the alleged Fourth Amendment violation is reviewed de novo. United States v. Morgan, 270 F.3d 625, 630 (8th Cir. 2001).

There are no issues on appeal about the validity of the initial stop in this case. Sanchez argues that even if the initial traffic stop was lawful, the detention of Hencz and Sanchez for approximately forty-five minutes was too long and constitutes a *de facto* arrest because the police were not diligent in their investigation. For example, Sanchez argues that the police failed to conduct their investigation quickly and unintrusively because they did not conduct the dog sniff until forty minutes after the initial stop even though the canine was immediately available. Sanchez further argues that Seaton's further questioning of Hencz after Seaton had issued the citation and told her she was "free to go" constituted a deceptive tactic that renders the ensuing detention unreasonable under the Fourth Amendment. He claims that the

firearm forming the basis of the instant offense was obtained only after a staged termination of the traffic stop. We disagree.

Given Hencz's traffic violation, Seaton had probable cause to stop her vehicle and conduct a reasonable investigation. United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir. 1994) (en banc). "A reasonable investigation includes asking for the driver's license, the vehicle's registration, as well as inquiring about the occupants' destination, route, and purpose." United States v. Munroe, 143 F.3d 1113, 1116 (8th Cir. 1998). "An officer may also question a vehicle's passengers to verify information provided by the driver, and conflicting stories may provide justification to expand the scope of the stop and detain the occupants." United States v. Barragan, 379 F.3d 524, 529 (8th Cir. 2004) (citations omitted). "'[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.'" Bloomfield, 40 F.3d at 916 (quoting United States v. Willis, 967 F.2d 1220, 1224 (8th Cir. 1992)). An investigative detention may turn into an arrest if it "lasts for an unreasonably long time or if officers use unreasonable force." United States v. Navarrete-Barron, 192 F.3d 786, 790 (8th Cir. 1999).

There was no *de facto* arrest here. The length of the detention was reasonable and the officers acted diligently to minimize the detention period. The majority of the nearly forty-five minute encounter was spent completing the traffic stop, including time spent by Seaton to confirm the identity of Sanchez based upon the highly suspect ID that he had provided. See Barragan, 379 F.3d at 528-29 (recognizing that an officer may detain the motorists while completing a number of routine but somewhat time-consuming tasks such as computerized checks of the registration and license). Any delay caused by the multiple computer checks of the ID was necessary to Seaton's legitimate investigation, as Sanchez had been intentionally evasive about his identity by providing the fake ID. And, even though Yote was at the scene from the

near beginning of the stop, the officers were busy completing other portions of the stop before turning to the dog sniff. And at that point, it only took a short time to walk the dog around the vehicle. Yote quickly alerted to the presence of drugs. A total duration of approximately forty-five minutes is certainly not unreasonable given these circumstances, and these officers employed the least intrusive means of detention and investigation. See e.g., United States v. Maltais, 403 F.3d 550, 557 (8th Cir. 2005) (finding a detention of nearly three hours reasonable under the circumstances); Bloomfield, 40 F.3d at 917 (holding a one-hour detention reasonable).

The officers' detention of Sanchez and Hencz after Hencz had declined consent to search the vehicle and during the canine sniff also did not violate Sanchez's Fourth Amendment rights. "If, during a traffic stop, an officer develops a reasonable, articulable suspicion that a vehicle is carrying contraband, he has 'justification for a greater intrusion unrelated to the traffic offense.'" Bloomfield, 40 F.3d at 918 (quoting United States v. Cummins, 920 F.2d 498, 502 (8th Cir. 1990)). Whether an officer has reasonable suspicion to expand the scope of a stop is determined by looking at "the totality of the circumstances, in light of the officer's experience." United States v. Carrate, 122 F.3d 666, 668 (8th Cir. 1997) (citations and quotation marks omitted).

At the time of this stop, Seaton had been a trooper with the Missouri State Highway Patrol for nearly nine years and was a drug recognition expert with additional training in drug interdiction. During the course of the stop, he observed Hencz's increasingly nervous behavior and questioned the fact that she did not know where she was to meet her aunt in St. Louis. He was also initially suspicious of Sanchez based on the ID Sanchez provided. Seaton's suspicions were confirmed by Swartz when Swartz arrived at the scene. The failed attempts to run a check on the questionable ID only exacerbated these suspicions, along with the conflicting stories provided by Hencz and Sanchez, and the fact that Hencz did not know Sanchez's last

name even though she claimed to have known him for almost a year. All of these acts and occurrences have been held to be indicators of criminal activity in other cases. E.g., Morgan, 270 F.3d at 631 (citing a driver's extreme nervousness and contradictory statements as indicators of criminal activity). Thus, whether or not Hencz agreed to visit further with Seaton after he issued the citation is immaterial. He had reasonable suspicion to expand the stop at that time. Examined in light of his training and experience, Seaton's observations constitute a reasonable, articulable suspicion that criminal activity was afoot, justifying the use of the dog and the seizure and detention of Sanchez and the vehicle that followed.

Although Sanchez does not challenge the search of the vehicle after Yote "alerted," we complete our analysis so as to reach the discovery of the firearm at issue in this case. A dog sniff is not a search within the meaning of the Fourth Amendment, and thus requires no probable cause to be performed. Illinois v. Caballes, 125 S. Ct. 834 (2005) "A dog's identification of drugs in luggage or in a car provides probable cause that drugs are present." Bloomfield, 40 F.3d at 919. Once probable cause is established, the vehicle can be searched without a warrant under the automobile exception to the warrant requirement. Id. This exception likewise applies to the inventory search conducted after the vehicle was towed. The officers did not need to obtain a warrant to make a valid search. Groh v. Ramirez, 540 U.S. 551, 572 (2004) (Thomas, J., dissenting). The gun was found during the inventory search and thus was not subject to suppression.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Sanchez's motion to suppress.

_____