# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2158

_____

United States of America,

        Appellee,

v.

Robert Rydell Williams,

        Appellant.

\*
\*
\*   Appeal from the United States
\*   District Court for the District
\*   of Minnesota.
\*
\*      [PUBLISHED]
\*
\*

_____

Submitted: November 14, 2005
Filed: December 9, 2005

_____

Before WOLLMAN, FAGG, and MELLOY, Circuit Judges.

_____

PER CURIAM.

After a trooper stopped a car for speeding and found cocaine inside, the Government charged the car's owner and passenger, Robert Rydell Williams, with conspiracy to distribute cocaine and attempted distribution of cocaine. Williams filed a motion to suppress the drugs asserting the traffic stop was the product of racial profiling and violated his Fourteenth Amendment rights. Following three evidentiary hearings, a magistrate judge recommended that Williams's motion to suppress be granted. The district court\* disagreed, holding that even if the trooper engaged in

---

\*The Honorable James M. Rosenbaum, Chief Judge, United States District Court for the District of Minnesota.

racial profiling as the magistrate concluded, there was no basis to suppress the cocaine because Williams voluntarily consented to the search resulting in the cocaine's seizure, purging any taint that may have infected the original stop. Accordingly, the district court denied Williams's motion to suppress. A jury convicted Williams. Williams now appeals the denial of his suppression motion. We affirm.

A trooper stopped Williams's car for speeding. During routine questioning of the driver and Williams, the trooper became suspicious based on their contradictory and vague answers about their trip. Nevertheless, the trooper gave the driver a warning ticket, returned her license and registration, and told her "to watch her speed and have a safe trip." The trooper then asked the driver whether he could ask her a few more questions and search the vehicle, and she agreed. After informing Williams he was not required to consent to a search, the trooper also obtained Williams's verbal and written consent. During the search, the trooper found some detergent boxes in the back of the vehicle that had been opened and resealed. About a half an hour after the initial stop, the trooper asked Williams whether he could open the boxes, and Williams agreed. Inside the boxes, the trooper found about five kilograms of cocaine. Williams was arrested and acknowledged the cocaine belonged to him.

A traffic stop is constitutional, regardless of the officer's subjective intent, if the officer had probable cause to believe a traffic violation occurred. United States v. Gomez-Serena, 368 F.3d 1037, 1041 (8th Cir. 2004) (defendant who conceded officer had probable cause to conduct traffic stop failed to show officer stopped him solely on account of race) (citing Whren v. United States, 517 U.S. 806 (1996)). A trooper who sees a traffic violation has probable cause to stop the vehicle and conduct a reasonable investigation. United States v. Sanchez, 417 F.3d 971, 974 (8th Cir. 2005). A reasonable investigation includes requesting asking the driver and passengers about their destination, route, and purpose. Id. at 975. If an encounter after a traffic stop's completion is consensual, then an officer may ask questions

unrelated to the stop and request consent to search the vehicle. United States v. Santos-Garcia, 313 F.3d 1073, 1078 (8th Cir. 2002).

Here, the district court found the officer had a reasonable and articulable suspicion that a traffic violation occurred. This finding is not clearly erroneous. Thus, the initial stop was not unconstitutional as Williams contends. Gomez-Serena, 368 F.3d at 1041. Further, even if it was, any taint of illegality was purged by Williams's voluntary consent to search. See United States v. Moreno, 280 F.3d 898, 900 (8th Cir. 2002). The district court carefully analyzed the factors impacting the voluntariness of Williams's consent. See id. First, the court noted the temporal proximity between the alleged illegality and the consent weighed in favor of finding Williams's consent was an act of free will because at least a half an hour elapsed by the time the officer reconfirmed William's consent to search the boxes of laundry detergent. Second, the court concluded that intervening factors confirmed Williams's consent was voluntary. Williams signed a consent form advising him of his right to refuse consent, and Williams studied the form carefully before signing it. Further, Williams was not in custody or being detained when he consented. The officer had already issued the warning ticket and told the driver she was free to leave. Last, the court stated the lack of purposefulness or flagrancy of the officer's alleged misconduct weighed in favor of a finding of voluntariness. There was no evidence the officer stopped the car as part of a preconceived plan to obtain consent to search it, and the officer's misidentification of the driver as white on the warning form was irrelevant to the voluntariness of Williams's consent because the driver and Williams did not know a race-identifying box had been mismarked on the warning form. Having carefully reviewed the record, we agree with the district court's analysis and conclude the court's findings that Williams consented is not clearly erroneous. Id.

Williams argues the district court committed clear error in finding he did not withdraw his consent. Because the record supports the finding, it is not clearly erroneous. United States v. Gray, 369 F.3d 1024, 1026 (8th Cir. 2004). At the first

hearing, the trooper testified he obtained Williams's written consent to search the vehicle and reconfirmed his consent before searching the detergent boxes. Williams did not contest this testimony in any way. Months later, Williams argued he withdrew his consent, and on cross-examination, his witnesses admitted they never mentioned this claim when they were interviewed immediately after their arrest. In any event, an officer who arrived on the scene as the trooper searched the detergent boxes testified he heard the trooper ask Williams whether he could search the boxes and Williams told the trooper he could. The district court credited this testimony.

Williams last contends the racial profiling in this case was so outrageous that the district court should have dismissed the indictment. We disagree. As the district court stated, there is strong evidence to suggest racial profiling could not have been a motive for the traffic stop because the trooper could not see the race of the car's occupants. In any event, there is no evidence of outrageous conduct that shocks the conscience of the court, necessary to establish a due process violation. See United States v. King, 351 F.3d 859, 867-68 (8th Cir. 2003). And, even if there was a due process violation, it is uncertain that dismissal is an appropriate remedy. See United States v. Armstrong, 517 U.S. 456, 461 n.2 (1996) (Court has not decided whether dismissal of indictment or other sanction is proper remedy if defendant has been victim of prosecution based on race); United States v. Chavez, 281 F.3d 479, 486-87 (5th Cir. 2002) (Supreme Court has not ruled there is a suppression remedy for violations of Fourteenth Amendment's Equal Protection Clause).

We have considered the arguments in Williams's pro se brief and reject them all. We thus affirm the denial of Williams's motion to suppress.

_____