Filed 5/24/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FREDDY ESPINO,<br><br>    Defendant and Appellant. | H040942<br>(Santa Clara County<br>Super. Ct. No. F1241967) |

Police stopped defendant Freddy Espino for speeding. Based on an informant's tip and other factors, the police extended the stop for further investigation. In the course of the stop, defendant consented to a search of his person, whereupon officers found an object in his pocket. Thinking the object was crack cocaine, the officers handcuffed defendant. But after examining the object, the police determined it was not crack cocaine, but a diamond. Without removing the handcuffs, police continued to question defendant and requested consent to search his car. After some hesitation, defendant gave consent for the car search, whereupon the police found several grams of methamphetamine in defendant's car.

Defendant moved to suppress the seized evidence under Penal Code section 1538.5. The trial court denied the motion. Defendant then pleaded no contest to possession of methamphetamine for sale, possession of a firearm by a felon, and possession of ammunition by a felon. He also admitted having a prior conviction for possession of cocaine for sale. The trial court imposed a total term of two years eight months.

Defendant appeals from the denial of his motion to suppress.  He does not dispute that the police lawfully stopped him for speeding, but he challenges the constitutionality of the seizure on two grounds.  First, he contends the police lacked reasonable suspicion to prolong the stop longer than necessary to address the traffic violation.  Second, he contends he did not give valid consent for the car search because he was unlawfully under arrest when officers requested his consent.

We conclude the police had reasonable suspicion to extend the duration of the initial traffic stop beyond that necessary for traffic enforcement purposes.  However, we hold defendant did not give valid consent for the car search because the police lacked probable cause to keep him under arrest when they requested his consent.  We will reverse the judgment.[1]

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Police searched defendant's vehicle after stopping him for speeding.  An onboard camera in the patrol car recorded video of the stop, but not audio.  In defendant's car, police found several grams of methamphetamine, a scale, and numerous small plastic bags.  In a subsequent warrant search of defendant's home, police found a gun and ammunition in a safe.

A. *Facts of the Search*

At the suppression hearing, Gilroy Police Sergeant Joseph Deras testified as follows.  In March 2012, he was conducting a "speed enforcement operation" near First Street and Kern Street in Gilroy.  He had a civilian "ride along" in the patrol car with him.  At around 7:30 p.m., Sergeant Deras stopped defendant for driving 50 to 51 miles per hour.  The speed limit was 35 miles per hour.  After defendant pulled over, Sergeant Deras approached defendant's car, explained the reason for the stop, and requested defendant's license, registration, and proof of insurance.  Defendant supplied all three

---

[1] Defendant also contends the abstract of judgment misstates the amount of the penalty assessments imposed by the court.  Because we will reverse the judgment, we do not reach this claim.

2

documents, and Sergeant Deras returned to his patrol car for a routine license and warrant check. He determined there were no warrants outstanding, defendant's license was valid, and he was not on probation or parole. But the check also showed defendant was registered as a sex offender under Penal Code section 290.

Sergeant Deras testified that, in response to learning an individual is a registered sex offender, his practice was to verify that the registrant lives at the registered address. With respect to defendant, Sergeant Deras testified, "By definition, [defendant] was in compliance" as a registrant under Penal Code section 290. However, Sergeant Deras also testified that, in the days before the stop, another officer told him certified letters had been sent to defendant's address, but police were unable to establish fact-to-face contact with defendant. Sergeant Deras inferred it was possible somebody else could have signed and returned the letters, and that defendant did not actually live at the address. Sergeant Deras made several calls to the other officer but could not reach him.

While Sergeant Deras was still in his patrol car, Gilroy Police Detective Bill Richmond called Sergeant Deras on his cell phone. Detective Richmond told Sergeant Deras to "hang on" to defendant. Detective Richmond had information from a "validated confidential informant" that defendant was selling narcotics and firearms. Sergeant Deras testified that he managed all the informants in Gilroy, he was aware of an informant "looking into" defendant, but he did not have "particulars about the exact amount of narcotics" or types of firearms involved.

At that point, Sergeant Deras decided to wait with his patrol car until other officers arrived to assist with the stop. He testified that he needed more information from Detective Richmond, and he was concerned about the possible presence of a firearm in the car. For that reason, he preferred to have other officers approach the car with him.

Around the same time, the civilian ride along told Sergeant Deras that he had seen defendant "making a very pronounced movement" to the passenger side of the car when

3

he first pulled over. Based on the civilian's description, Sergeant Deras considered this to be a "furtive movement," i.e., a possible attempt to conceal contraband.

After several minutes, Detective Richmond and another officer arrived. The officers approached defendant's car, ordered him to get out, and walked him to the sidewalk for questioning. Defendant told the officers he was living at the address listed in his sex offender registration, but he had never signed for any certified letters. After defendant put his hands in his pockets several times, the officers asked defendant for consent to search his pockets. Defendant consented to the search. The officers found "some type of hard, small, little object" consistent with the size and texture of crack cocaine. At that point, the officers placed defendant in handcuffs. They told him he was being detained and that he was not under arrest.

At the suppression hearing, when the prosecutor asked Sergeant Deras why they placed defendant in handcuffs, he answered, "Well, as soon as that object came out, we thought it was crack cocaine," so "we thought he was committing a felony." After examining the object under his patrol car spotlight, however, Sergeant Deras determined it was a diamond. Sergeant Deras estimated it took him "probably a minute" to determine the object was not contraband.

After Sergeant Deras determined the object was a diamond, he asked defendant whether there were any weapons or drugs in the car. Defendant was still handcuffed at the time, and he had been handcuffed for about two or three minutes. When Sergeant Deras asked defendant for consent to search the car, defendant "took a moment to think about it" and gave his consent, whereupon the officers began their search. On the front passenger side floorboard of the car, Sergeant Deras found a green plastic baby wipes box. He opened the box and found a number of small, clear plastic bags, an electronic scale, and several grams of methamphetamine. Based partly on this evidence, police obtained a search warrant for defendant's residence, where they found a safe containing a .22-caliber revolver and ammunition.

4

The video from Sergeant Deras' onboard camera establishes a rough timeline of the aforementioned events. The camera recorded the stop from behind defendant's car. Thirty seconds after defendant's car pulled over, Sergeant Deras approached the passenger's side of the car and spoke with defendant for about a minute. He then walked back to his patrol car and out of view of the camera. The video shows defendant waited in his car for the next six minutes, at which time two officers approached the car, and defendant exited the vehicle. The officers then walked defendant to the sidewalk, out of view of the camera. About four minutes later, the officers seated defendant on the curb of the sidewalk with his hands handcuffed behind him. One minute later, two officers began searching the car. About 13 minutes elapsed between the initial stop and the search of the car. The video does not show defendant making a "very pronounced motion" as described by the civilian ride along.

B. *Procedural Background*

1. *Motion to Suppress*

Defendant challenged the legality of the search and moved to suppress the seized evidence under Penal Code section 1538.5. Defendant argued that the police prolonged the search longer than necessary to effectuate the legitimate purposes of the traffic stop. He also argued that he did not validly consent to a search of the car when police requested his consent. Furthermore, he argued that the seized drugs, as the fruits of a poisonous tree, could not support a finding of probable cause for the subsequent warrant search of his home.

The prosecution responded that the tip from a confidential informant gave officers reasonable suspicion to detain defendant longer than necessary to deal with the speeding violation. The prosecution also argued that the discovery of the object in defendant's pocket gave them probable cause to search the car. Finally, the prosecution argued that defendant gave valid consent for the search.

The trial court held a hearing at which the prosecution presented the testimony of Sergeant Deras and the civilian who accompanied him. After taking the matter under submission, the court made several findings. The court found the police officers "had a variety of information they needed to deal with from a variety of sources at the time of the stop." The court reviewed the video of the stop and matched the progression of events to the officer's narrative. Based on its review, the court found that the total time elapsed from the stop of the car to the seizure of contraband was 13 minutes. The court found that an insignificant amount of time had passed between the time police discovered that the object seized from defendant's pocket was not contraband to the time defendant consented to the search of his car. Based on these findings, the court concluded the search was constitutional and it denied the motion to suppress.

2. *Proceedings After Denial of the Motion to Suppress*

The prosecution charged defendant by information with possession of methamphetamine for sale, possession of a firearm by a felon, and possession of ammunition by a felon. (Health & Saf. Code, § 11378; former Pen. Code, §§ 12021, subd. (a)(1), 30305, subd. (a)(1).) The information alleged defendant had suffered a prior conviction for possession of cocaine for sale. (Health & Saf. Code, § 11370.2, subd. (c).)

After the trial court denied the motion to suppress, defendant pleaded no contest to all three counts and admitted the prior conviction allegation. The trial court imposed a total term of two years eight months, composed of the middle term of two years on the first count consecutive to eight months (one-third the middle term) on the second count. The court also imposed the middle term of two years on the third count to run concurrently. The court struck the punishment for the prior conviction allegation.

## II. DISCUSSION

Defendant does not challenge the legality of the initial stop. Instead, he contends Sergeant Deras prolonged the duration of the stop longer than reasonably necessary to address the speeding violation. He argues that the detention had therefore become

6

unconstitutional by the time he consented to the search. Second, defendant argues that he was unlawfully under arrest when he consented to the car search because the probable cause for his arrest—the discovery of the object in his pocket—ceased to exist when police discovered the object was a diamond. He contends the consent to search his car was therefore invalid.

The Attorney General contends Sergeant Deras had reasonable suspicion independent of the traffic violation—e.g., the confidential informant's tip—which justified the prolonged detention. The Attorney General also contends defendant validly consented to the search because the police had the authority to arrest defendant for the traffic violation under *Atwater v. City of Lago Vista* (2001) 532 U.S. 318 (*Atwater*).

A. *Legal Standards*

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated . . . ." (U.S. Const., 4th Amend.) This guarantee has been incorporated into the Fourteenth Amendment to the federal Constitution and thereby applies to the states. (*Mapp v. Ohio* (1961) 367 U.S. 643.)

In reviewing a lower court's ruling, we are bound by factual findings supported by substantial evidence. (*Camacho*, *supra*, 23 Cal.4th at p. 830.) The ultimate question of whether a search was unreasonable is a question of law we review de novo. (*Ibid.*)

In response to a motion to suppress evidence seized in a warrantless search, the prosecution bears the burden to prove police conducted the search under a valid exception to the Fourth Amendment's warrant requirement. (*People v. Camacho* (2000) 23 Cal.4th 824, 830 (*Camacho*).) When the prosecution asserts that a defendant has consented to a search, the prosecution bears the additional burden of proving by a preponderance of the evidence "that the defendant's manifestation of consent was the product of his [or her] free will and not a mere submission to an express or implied assertion of authority." (*People v. James* (1977) 19 Cal.3d 99, 106.)

7

B. *Reasonable Suspicion Supported the Initial Period of Detention*

Defendant complains that although Sergeant Deras initially stopped him for speeding, officers never attempted to issue him a speeding ticket and instead expanded the scope of the stop beyond its initial purpose. The Attorney General argues that Sergeant Deras had reasonable suspicion to extend the duration of the stop beyond that necessary to issue defendant a speeding ticket. We agree with the Attorney General that the police had reasonable suspicion independent of the traffic violation sufficient to extend the duration of the detention.

"A seizure for a traffic violation justifies a police investigation of that violation." (*Rodriguez v. United States* (2015) 135 S.Ct. 1609, 1614 (*Rodriguez*).) However, "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." (*Illinois v. Caballes* (2005) 543 U.S. 405, 407.) "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, [citation] and attend to related safety concerns, [citation]. [Citations.] Because addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate th[at] purpose.' [Citations.] Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." (*Rodriguez*, at p. 1614.) These tasks include those incidental to traffic enforcement, such as validating a license and registration, searching for outstanding warrants, and checking for proof of insurance. (*Id.* at p. 1615.)

If the police develop reasonable suspicion of some other criminal activity during a traffic stop of lawful duration, they may expand the scope of the detention to investigate that activity. (See *Illinois v. Caballes*, *supra*, 543 U.S. at pp. 407-408; *United States v. Gomez Serena* (8th Cir. 2004) 368 F.3d 1037, 1041 [an investigative stop can grow out of a traffic stop if the officer has reasonable suspicion of criminal activity to expand the investigation, even if those suspicions were unrelated to the underlying traffic offense].)

8

Defendant concedes this point, but he argues that Sergeant Deras lacked any reasonable suspicion of criminal activity apart from the speeding violation. We disagree.

Reasonable suspicion is a lesser standard than probable cause and can arise from less reliable information than that required for probable cause. (*People v. Wells* (2006) 38 Cal.4th 1078, 1083.) To be reasonable, an officer's suspicion must be supported by some specific, articulable facts reasonably consistent with criminal activity. (*Ibid.*) The officer's subjective suspicion must be objectively reasonable. (*Ibid.*) "[A]n investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith." (*Ibid.*)

Here, Sergeant Deras was aware of several facts supporting reasonable suspicion of independent criminal activity. First, he had evidence suggesting that defendant may not have been in compliance with Penal Code section 290's registration requirements. Second, Sergeant Deras was aware that a confidential informant had information suggesting defendant may have been involved in selling drugs and guns. Third, the civilian ride along observed defendant making a furtive movement as Sergeant Deras was stopping his vehicle. Taken together, these facts provided reasonable suspicion sufficient to extend the length of the traffic stop beyond that necessary for traffic enforcement.

Defendant contends the informant's tip was too vague and unsubstantiated to provide reasonable suspicion of defendant's involvement in drugs and guns. If Detective Richmond's call relaying the confidential informant's tip was the sole basis for reasonable suspicion, this argument would have merit. The so-called "collective knowledge" or "official channels" rule requires the prosecution to provide corroboration of the accuracy of anonymous tips relayed in this manner. The court in *In re Eskiel S.* held that "[a] radio broadcast which cannot be traced back to its source amounts to nothing more than an anonymous tip. Hence, the information contained in such a broadcast can support a detention only where that information is 'sufficiently corroborated to furnish the requisite reasonable suspicion.' " (*In re Eskiel S.* (1993)

9

15 Cal.App.4th 1638, 1644.)  Here, however, Sergeant Deras testified that he had some personal knowledge of the informant's tip because he was responsible for managing all the confidential informants in Gilroy.  Furthermore, he relied on the additional factors set forth above—e.g., defendant's furtive movement, and other officers' inability to confirm defendant's place of residence.  We therefore conclude Sergeant Deras had a sufficient basis for the extended stop, even in the absence of corroboration of the informant's tip.

C. *Defendant Did Not Give Valid Consent for the Search of His Car*

After defendant gave officers consent to search his person, they found an object in his pocket which they believed to be crack cocaine.  On this basis, officers placed defendant in handcuffs and seated him on the sidewalk.  After Sergeant Deras examined the object in the light of his patrol car, he determined the object was a diamond.  Nonetheless, the officers kept defendant in handcuffs, continued to question him, and requested consent to search his car.

Defendant contends he was under de facto arrest when police requested consent to search his car.[2]  Because the police lacked probable cause to keep him under arrest, he contends the arrest was unlawful.  Therefore, he argues, he did not provide valid consent, and the car search was illegal.  The Attorney General contends defendant was lawfully under arrest as part of a valid traffic enforcement stop because the police had probable cause to believe he was speeding.  In the alternative, the Attorney General argues that the officers' use of handcuffs did not convert the detention into an unlawful arrest.

Defendant's argument requires us to resolve three issues:  First, whether officers had placed him under de facto arrest; second, whether the arrest was unlawful at the time

_____

[2] At oral argument, defendant characterized the "de facto arrest" as an "intolerably intrusive detention" rather than an arrest.  Regardless of the nomenclature used, we will analyze the specific facts of this case under applicable case law to determine whether probable cause was necessary to justify the degree of intrusion imposed during the handcuffing.

10

they requested his consent; and third, whether his consent was invalid as a consequence. We answer all three questions in the affirmative.

1. *Defendant Was Under Arrest When Officers Requested Consent to Search His Car*

Defendant, relying on *In re Antonio B.* (2008) 166 Cal.App.4th 435 (*Antonio B.*), argues that police placed him under de facto arrest when they put handcuffs on him and seated him on the curb of the sidewalk. We agree.

" 'A seizure occurs whenever a police officer "by means of physical force or show of authority" restrains the liberty of a person to walk away.' " (*People v. Celis* (2004) 33 Cal.4th 667, 673 (*Celis*).) A seizure can be an arrest or a detention. (*Antonio B.*, *supra*, 166 Cal.App.4th at pp. 439-440.) A warrantless arrest must be supported by probable cause. (*Celis*, at p. 673.) "Probable cause exists when the facts known to the arresting officer would persuade someone of 'reasonable caution' that the person to be arrested has committed a crime." (*Ibid.*)

In *Antonio B.*, the Court of Appeal for the Second District considered the question of when the use of handcuffs elevates a detention to the level of a formal arrest requiring probable cause. The court first noted that "handcuffing a suspect for a short period does not *necessarily* transform a detention into an arrest." (*Antonio B.*, *supra*, 166 Cal.App.4th at p. 441, citing *Celis*, *supra*, 33 Cal.4th at p. 675; cf. *Dunaway v. New York* (1979) 442 U.S. 200, 215 [handcuffs considered among the "trappings of a technical formal arrest"]; *United States v. Newton* (2d Cir. 2004) 369 F.3d 659, 676 [handcuffs are generally recognized as a hallmark of a formal arrest, citing cases].) The court then recognized the general rule as set forth in *Celis*: "The issue is whether the use of handcuffs during a detention was reasonably necessary under all of the circumstances of the detention. [Citations.] We look to 'the facts known to the officers in determining whether their actions went beyond those necessary to effectuate the purpose of the stop, that is, to quickly dispel or confirm police suspicions of criminal activity.' " (*Antonio B.*,

11

at p. 441, quoting *Celis*, at pp. 675-676.) In a survey of the case law, the court identified two predominant factors that most courts consider in deciding whether handcuffing a detainee converts a detention into an arrest. The court concluded that handcuffing a detainee does not result in an arrest when, "at the time of the detention, the officer had a reasonable basis to believe the detainee presented a physical threat to the officer or would flee." (*Antonio B.*, at p. 442.)

Applying these principles, we conclude that neither physical threats nor the threat of escape justified the handcuffing of defendant absent probable cause. Defendant—a 50-year-old man with a medium-to-heavy build—was peaceful and compliant at all times during the stop. (Cf. *Haynie v. County of Los Angeles* (9th Cir. 2003) 339 F.3d 1071, 1077 [detainee's belligerence and refusal to obey orders supported finding that handcuffing him did not constitute arrest].) The police outnumbered him three-to-one, and once removed from his car, he presented little threat of escape. (Cf. *Celis*, *supra*, 33 Cal.4th at p. 676 [no arrest where police officer drew gun and handcuffed detainee, given that suspects outnumbered police two-to-one and presented threat of fleeing]; *United States v. Bautista* (9th Cir. 1982) 684 F.2d 1286, 1289-1290 [no arrest where officer handcuffed two men, one of whom was preparing to flee].) Officers had already searched defendant's person and found no weapons. (Cf. *United States v. Alvarez* (9th Cir. 1990) 899 F.2d 833, 839 [no arrest where officers had strong reason to believe detainee was armed].) And while standing on the sidewalk, defendant was too far from the car to reach for any weapons in it. Finally, as to Sergeant Deras' statement to defendant that he was not under arrest, this did not negate the fact that defendant was physically restrained by handcuffs. (*United States v. Newton*, *supra*, 369 F.3d at p. 676 [detainee in handcuffs was under arrest despite police advisement that he was not under arrest]; see also *People v. Aguilera* (1996) 51 Cal.App.4th 1151, 1163 [defendant was in custody despite officer's statement that he was not in custody]; *Seals v. United States* (D.C. Cir. 1963) 325 F.2d

12

1006, 1008-1009 [defendant interrogated at police station was under arrest notwithstanding officer's statement that defendant was not under arrest].)

Based on these facts, defendant was under de facto arrest when officers handcuffed him, requiring probable cause for the arrest. As confirmed by Sergeant Deras' testimony, the police based their arrest on the belief that defendant was in possession of crack cocaine. Although the object in defendant's pocket was actually a diamond, probable cause for an arrest may be supported by a reasonable, good faith mistake of fact. (See *Hill v. California* (1971) 401 U.S. 797, 802; *People v. Hill* (1968) 69 Cal.2d 550, 553; *Weinstein v. City of Eugene* (9th Cir. 2009) 337 Fed.Appx. 700, 701; see also Pen. Code, § 836, subd. (a)(3).) Defendant does not claim—and nothing in the record shows—that the officers lacked a good faith belief that the object was crack cocaine when they first removed the diamond from defendant's pocket. We thus conclude defendant was lawfully arrested when police initially handcuffed him.

2. *Probable Cause for the Arrest Ceased to Exist When Police Discovered the Object in Defendant's Pocket Was Not Contraband*

Defendant argues he was no longer lawfully under arrest once police determined the object in his pocket was not crack cocaine, but a diamond. We agree with defendant that, once police realized the object was a diamond, they lacked probable cause to keep him under arrest for drug possession. The only other basis for the arrest—a vague and uncorroborated claim by an informant—did not constitute probable cause. (*People v. Ramey* (1976) 16 Cal.3d 263, 269 [probable cause not established by conclusory information]; *People v. French* (2011) 201 Cal.App.4th 1307, 1318 [conclusory statements by confidential informants insufficient to support a warrant]; cf. *Illinois v. Gates* (1983) 462 U.S. 213, 244 [probable cause supported by totality of the circumstances where details of informant's tip were corroborated by police investigation].) Nor did the civilian's observation of a "furtive movement" provide probable cause, as the movement itself lacked sufficient criminal connotation. (*Gallik v.*

13

*Superior Court* (1971) 5 Cal.3d 855, 859 [to constitute probable cause, a furtive gesture must be invested with guilty significance]; *People v. Superior Court* (*Kiefer*) (1970) 3 Cal.3d 807, 823 [mere furtive movement of occupant of vehicle being chased by officer for traffic violation insufficient to establish probable cause]; *People v. Lathan* (1974) 38 Cal.App.3d 911, 916 [furtive movements must be such as to have a criminal connotation].)

Neither party cites any authority addressing the question of whether, or for how long, police may constitutionally keep a person under arrest without a warrant once they discover an arrest is based on a mistake of fact. Because we are aware of no published California opinion that address this specific question, we look to the laws of other jurisdictions.

The common law has long required police to release an arrestee upon learning beyond a reasonable doubt that a warrantless arrest was based on error. "An arrest of another without a warrant is often privileged because the actor reasonably suspects that the other whom he [or she] arrests has committed a felony. So too, the actor's privilege to maintain the custody of one whom he [or she] has arrested on suspicion of felony extends no further than to maintain the custody while he [or she] still entertains such a suspicion. If the actor, whether a private person or a police officer, has arrested another without a warrant on reasonable suspicion of felony, and has ascertained beyond a reasonable doubt that the suspicion upon which the privilege to arrest is based is unfounded, he [or she] is no longer privileged to keep the other in custody and must release him [or her] . . . ." (Restatement of Torts, 2d § 134, Comment f.)

Several federal courts have adopted the aforementioned common law rule in resolving lawsuits for civil rights violations—including those with constitutional claims. (*Duckett v. City of Cedar Park, Tex.* (5th Cir. 1992) 950 F.2d 272, 279 [a plaintiff may state a constitutional claim if, after the police officers make an arrest pursuant to a warrant, police officers fail to release the arrestee after they receive information upon

14

which to conclude beyond a reasonable doubt that such warrant had been withdrawn]; *McConney v. City of Houston* (5th Cir. 1989) 863 F.2d 1180, 1185 [once an officer ascertains beyond reasonable doubt that one who has been so arrested is in fact not intoxicated, the arrestee should be released]; *Thompson v. Olson* (1st Cir. 1986) 798 F.2d 552, 556 [following a legal warrantless arrest based on probable cause, an affirmative duty to release arises if the arresting officer ascertains beyond a reasonable doubt that the basis for the probable cause is unfounded]; *Babers v. City of Tallassee, Ala.* (M.D. Ala. 2001) 152 F.Supp.2d 1298, 1308-1309 [following a lawful warrantless arrest, a police officer has an affirmative duty to release an arrestee if he ascertains beyond a reasonable doubt that the probable cause which formed the basis for the arrest was unfounded]; see also *Gay v. Wall* (4th Cir. 1985) 761 F.2d 175, 179 [opining that deprivation of liberty after police knew defendant was innocent may constitute federal civil rights violation]; but see *Panagoulakos v. Yazzie* (10th Cir. 2013) 741 F.3d 1126, 1131[officer enjoyed qualified immunity because existing law did not clearly establish the duty to release arrestee].)

The aforementioned cases concerned civil rights lawsuits, not the seizure of evidence during a warrantless search. And police in these cases typically kept the detainees under arrest for a substantial period of time, whereas defendant here had only been handcuffed for two or three minutes when officers requested his consent for the car search. Thus, we do not infer from these cases that the officers had a duty to release defendant within seconds of discovering the object was a diamond. Nonetheless, once probable cause for the arrest ceased to exist, the police incurred a duty to release defendant within a reasonable amount of time. But rather than remove his handcuffs, they continued to question him while he was unlawfully arrested. The trial court below concluded that an "insignificant" amount of time had passed between the officers' discovery that the object was a diamond and their request for consent to search

15

defendant's car.[3]  But regardless of exactly *when* the police incurred a duty to release defendant, they lacked probable cause for the arrest when they requested consent to search defendant's car.  In other words, the issue is not merely the amount of time that passed.  Instead, the question is whether the fact that defendant was unlawfully under arrest invalidated his consent because he did not give it voluntarily.

"[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances."  (*Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 227.)  But "[t]he rule is clearly established that consent induced by an illegal search or arrest is not voluntary, and that if the accused consents *immediately following* an illegal entry or search, his assent is not voluntary because it is inseparable from the unlawful conduct of the officers."  (*Burrows v. Superior Court* (1974) 13 Cal.3d 238, 251, italics added; *People v. Johnson* (1968) 68 Cal.2d 629, 632; *People v. Haven* (1963) 59 Cal.2d 713, 719.)  The condition of an unlawful arrest renders consent involuntary because such consent is necessarily " 'induced by compulsion, intimidation, oppressive circumstances, or other similar factors inherent in the situation which make that consent less than an act of the free will.' "  (See *People v. Lawler* (1973) 9 Cal.3d 156, 164, quoting and distinguishing *Mann v. Superior Court* (1970) 3 Cal.3d 1, 8.)  A lengthy passage of time, while likely compounding the compulsory nature of an unlawful arrest, is not a necessary factor in this analysis.  Based on the totality of the circumstances, we hold defendant did not voluntarily consent to the search of his car.

Relying on *Atwater*, *supra*, the Attorney General argues that, even if the police did not have probable cause for defendant's arrest based on the diamond found in his pocket, the arrest was not unlawful because police could have arrested defendant for the speeding violation.  But this is not the law in California.  For most traffic infractions, officers may

---

[3] Because the trial court's conclusion necessarily implied the search was constitutional, we consider this conclusion a matter of law, not a factual finding.

16

not make a custodial arrest unless some other condition arises—e.g., the motorist fails to produce a driver's license or other identification. (See *People v. McKay* (2002) 27 Cal.4th 601, 605 (*McKay*); *People v. McGaughran* (1979) 25 Cal.3d 577, 583, citing Veh. Code, §§ 40301-40303, 40504 [regulating release upon a promise to appear for a traffic infraction].) For Fourth Amendment purposes, the California Supreme Court has held that application of the exclusionary rule does not depend on whether the officer complies with these arrest procedures. (*McKay*, at p. 611.) Nonetheless, *Atwater* does not authorize police to arrest a driver for an offense unsupported by probable cause merely because the driver is stopped for speeding.

In *Atwater*, *supra*, 532 U.S. 318, police arrested a driver for violating a seatbelt law. The arrest was supported by probable cause, and state law in Texas authorized a warrantless arrest for such violations. The United States Supreme Court held that the arrest did not violate the Fourth Amendment. (*Id.* at p. 354.) Looking to historical common law, the court concluded that nothing in the traditional protections against search and seizure prohibited police from making arrests for such minor offenses. *Atwater* thereby establishes that the police officers here could have arrested defendant for speeding without violating the Fourth Amendment. But the officers did *not* arrest defendant for speeding.

The Attorney General argues that it makes no difference why the police arrested defendant because the officers' subjective intent is irrelevant for Fourth Amendment purposes under *Whren v. United States* (1996) 517 U.S. 806 (*Whren*). Combining *Whren* and *Atwater* together, the Attorney General argues that as long as the police *could have* constitutionally arrested defendant for speeding, it does not matter that they arrested him for some other unrelated offense. For example, in *Devenpeck v. Alford* (2004) 543 U.S. 146 (*Devenpeck*), police stopped a motorist suspected of impersonating a police officer. In the course of the stop, police discovered the motorist was recording the stop on a tape recorder. The police arrested the motorist for violating state privacy laws by recording

17

the stop. After a trial court ruled that the tape recording was legal under state privacy laws, the motorist sued the police for unlawful arrest and imprisonment.

Applying *Whren*, the United States Supreme Court held the arrest was constitutional because the facts could have established probable cause that the motorist was impersonating a police officer, even if that is not why police arrested the motorist. The court held, "Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. [Citations.] That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause. As we have repeatedly explained, ' "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." ' " (*Devenpeck*, *supra*, at p. 153, quoting *Whren*, at p. 813.)

As the court noted in *Devenpeck*, we consider a police officer's state of mind "for the facts that he knows" in formulating probable cause. (*Devenpeck*, *supra*, at p. 153.) But nothing in *Whren* or *Devenpeck* suggests that police may arrest a person for an offense when they know the facts before them *do not* support probable cause that a defendant has committed an offense. To the contrary, the police officers in *Whren* and *Devenpeck* clearly held objectively reasonable good faith beliefs in the facts supporting probable cause for the offenses for which they arrested the defendants. These cases are in accord with the longstanding "good faith exception" to the Fourth Amendment's warrant requirement. (See, e.g., *United States v. Leon* (1984) 468 U.S. 897, 919 [if the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional].)

By contrast, once the police here discovered that the object in defendant's pocket was a diamond, the facts known by the officers no longer supported his arrest for drug

18

possession.  And nothing in the record suggests they held—or reasonably could have held—a good faith belief to the contrary.  Accordingly, we do not believe the Attorney General's reliance on *Atwater*, *Whren*, *and Devenpeck* supports the search of defendant's car.  This view would allow the police to search and arrest a motorist for any offense— even where officers know there is no evidence that any other offense has been committed—so long as there is probable cause to support a traffic violation (e.g., speeding).  We disagree with this view.

The United States Supreme Court underscored this principle in its most recent traffic stop case, *Rodriguez*, *supra*, 135 S.Ct. 1609.  In that case, a police officer lawfully stopped Rodriguez for driving on a highway shoulder, a violation of state law.  After checking his driver's license, the officer issued a warning ticket to Rodriguez.  But instead of releasing him, the officer continued to detain him until another officer arrived with a drug-sniffing dog.  The dog alerted to the presence of drugs, whereupon police searched the car and found methamphetamine.  The Supreme Court held the search unconstitutional in the absence of reasonable suspicion to support the dog search.  (*Id.* at p. 1616.)  Like the officers here, the police in *Rodriguez* could have arrested and searched Rodriguez based on the traffic violation—but they did not.  Instead, they issued him a warning ticket.  Having done so, their subsequent search for drugs could not be justified based on probable cause for the traffic violation.  This result makes clear that police may not use probable cause for a traffic violation to justify an arrest for an unrelated offense where, under the facts known to police, they have no probable cause supporting the unrelated offense.  (Cf. *id.* at pp. 1618-1622 [citing *Atwater* and *Whren*] (dis. opn. of Thomas, J.).)

For these reasons, we hold the search of defendant's car violated the Fourth Amendment.  Defendant did not provide valid consent for the search, and the prosecution failed to show the search was valid under any other exception to the Fourth Amendment's warrant requirement.  Accordingly, we will reverse the judgment and remand with

19

instructions to grant the motion to suppress the evidence seized in the car search.  As to the evidence seized in the warrant search of defendant's home, a hearing is required to determine the validity of the warrant absent the evidence seized in the car search.

### III.  DISPOSITION

The judgment is reversed, the conviction is vacated, and the matter is remanded. On remand, the trial court shall vacate its order denying defendant's motion to suppress the evidence seized in the car search and shall enter a new order granting that motion.  As to evidence seized in the warrant search of defendant's home, the trial court shall hold a hearing to determine the validity of the warrant absent the evidence seized from defendant's car.

_____

Márquez, J.

WE CONCUR:


_____

Rushing, P.J.


_____

Grover, J.


<u>People v. Espino</u>
No. H040942

Trial Court:                                  Santa Clara County
                                              Superior Court No.:  F1241967

Trial Judge:                                  The Honorable Edward F. Lee


Attorney for Defendant and Appellant          Rudolph J. Alejo
Freddy Espino:                                under appointment by the Court of
                                              Appeal for Appellant




Attorneys for Plaintiff and Respondent        Kamala D. Harris,
The People:                                   Attorney General

                                              Gerald A. Engler,
                                              Chief Assistant Attorney General

                                              Jeffrey M. Laurence,
                                              Acting Senior Assistant Attorney
                                              General

                                              Eric D. Share,
                                              Supervising Deputy Attorney General

                                              Ronald E. Niver,
                                              Deputy Attorney General

                                              Michael J. Mongan,
                                              Deputy Attorney General


People v. Espino
H040942