Filed 10/16/20  P. v. Wood CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

THE PEOPLE,

    Plaintiff and Respondent,

v.

DINO EUGENE WOOD,

    Defendant and Appellant.

B296656

(Los Angeles County
Super. Ct. No. BA468256)

APPEAL from a judgment of the Superior Court of Los Angeles County, Terry Bork, Judge. Affirmed as modified.

Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, David E. Madeo, Acting Supervising Deputy Attorney General, and Kathy S. Pomerantz, Deputy Attorney General, for Plaintiff and Respondent.

A jury found defendant and appellant Dino Wood (defendant) guilty of resisting an officer, unlawful possession of a firearm, and possession of a concealed firearm. We principally consider whether the trial court should have granted defendant's pretrial motion to suppress, which argued the police officers who stopped defendant and conducted a pat down search of his person lacked the suspicion necessary to justify such a search. We also decide a handful of additional claims defendant raises concerning the sufficiency of the evidence supporting his resisting an officer conviction, the admissibility of gang graffiti evidence, the trial court's ruling on a *Pitchess*[1] motion, and the manner in which the court struck certain sentencing enhancements.

## I. BACKGROUND

### A. The Charges and Defendant's Suppression Motion

In August 2018, the Los Angeles District Attorney's Office filed a three-count information against defendant. Count one charged a violation of Penal Code section 69[2] and alleged he knowingly resisted a police officer and unlawfully attempted, by means of threat and violence, to prevent the officer from performing a duty imposed by law. Count two alleged defendant, who had prior felony convictions, unlawfully possessed a firearm in violation of section 29800, subdivision (a)(1). Count three alleged defendant was a previously convicted person in possession of a concealed firearm in violation of section 25400,

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

[2] Undesignated statutory citations that follow are to the Penal Code.

2

subdivision (a)(2). The information further alleged defendant had been previously convicted of a serious and/or violent felony, and had also been convicted of other felony offenses.

Defendant filed a pretrial suppression motion. The motion sought to suppress weapons and narcotics recovered from defendant's person and statements defendant made to apprehending officers. Defendant argued his detention and the search of his person was not justified by the requisite suspicion. The trial court held an evidentiary hearing.

Los Angeles Police Department Officer Anthony Cabriales, one of the apprehending officers, testified at the hearing. He and his partner Officer Elizabeth Felix were patrolling the area of 60th Street and St. Andrews in uniform on May 20, 2018. The location is a high-crime area in which a number of cars are stripped for parts. Gang officers had referred Officer Cabriales to that area to be on the lookout for narcotic-related crimes, grand theft auto, and car stripping. There is also a problem with guns in the area, and almost all of the stolen vehicle and car stripping cases Officer Cabriales investigated involved some sort of weapon or tools used to strip vehicles such as screwdrivers, crowbars, or other tools which can be used as weapons.

During their patrol, Officers Cabriales and Felix drove past a parked Honda Accord, a commonly stolen make and model, that had its front hood open and three occupants inside. Considering the location where the car was parked and the referral from the gang officers, he believed the car's occupants were possibly stripping the vehicle for parts.

Officer Cabriales and Officer Felix ran the car's license plate and learned it was a recovered stolen vehicle. This meant, at least according to the police computer, that the vehicle had

been previously stolen but had since been returned to the owner.[3] Officer Cabriales decided to get a closer look at the car, and when he did, he saw the driver hand what he believed to be an alcoholic beverage container to the person sitting in the back seat of the car, who was later identified as defendant.[4]

The man sitting in the Honda's driver's seat got out of the car as the officers approached, and Officer Cabriales ordered the other two occupants (defendant in the back seat and a woman in the front passenger seat) to step out of the vehicle as well. Officer Cabriales believed a pat down search of the car's occupants, for officer safety reasons, was warranted under the circumstances—which included his knowledge of criminal activity in the area where the car was parked; the possibility he was dealing with a car stripping, a crime in which, in his experience, perpetrators are commonly armed; his inability to tell whether the car's occupants were concealing weapons because several of

---

[3] Officer Cabriales testified that just because a car had been stolen and recovered previously did not mean it was not currently an unreported stolen car, noting he had known vehicles to have been stolen three or four times.

[4] When asked if he saw the driver get out of the car and pass an alcoholic beverage to someone still in the vehicle, Officer Cabriales said that was correct. On cross-examination, Officer Cabriales confirmed he had seen the driver of the car with an open container, though he acknowledged he had not mentioned the open container in his police report describing defendant's detention. Officer Cabriales also characterized the investigation he conducted as being "a [grand theft auto] car stripping investigation, drinking in public investigation."

them were wearing loose, baggy clothing; the state of the car's interior, which was disheveled and indicated the dash had been tampered with; and the presence of an open container indicating people had been drinking.

Officer Cabriales and Officer Felix patted down the two occupants who had been in the front seats. Officer Cabriales then attempted to pat down defendant, but he was reluctant to submit to a pat down. Defendant was standing with his hands in his front pockets, and Officer Cabriales instructed him to take them out. Defendant complied, and Officer Cabriales subsequently saw a filled syringe that contained a substance resembling heroin protruding from defendant's back pocket.

Officer Cabriales attempted to place handcuffs on defendant after seeing the syringe, but defendant tensed up and prevented Officer Cabriales from handcuffing him. A struggle ensued. Officer Cabriales took defendant to the ground and Officer Felix tased defendant, but defendant continued to fight. During the struggle, a gun fell out of defendant's front pocket. Officer Cabriales punched defendant several times, including in the head, and Officer Cabriales eventually used an upper body restraint hold to subdue defendant and take him into custody.

The trial court denied the motion to suppress. The court found there was sufficient cause to order everyone out of the vehicle and detain defendant. The court found that under the totality of the circumstances, including what was believed to be an open alcoholic beverage container being passed in the vehicle, there was reasonable justification for a pat down search of the vehicle's occupants. The court further found that upon observing the syringe containing what appeared to be heroin, there was sufficient cause to arrest defendant and Officer Cabriales was

justified in not only continuing the pat down, but also in performing a search incident to arrest. The court stated it found Officer Cabriales's testimony credible and concluded his actions were reasonable under the circumstances.

### B.     Other Pertinent Pretrial Motions

Defendant filed a *Pitchess* motion and the court granted the request for an in camera review of Officer Cabriales and Officer Felix's personnel files for any derogatory information regarding credibility, fabrication of evidence, dishonesty in report writing, or excessive force. The trial court held three in camera hearings on the *Pitchess* motion and ultimately concluded there was no discoverable information to be turned over to the defense.

Before trial, defendant also filed a second motion to suppress the evidence that had been the subject of his prior motion, arguing new evidence had come to light. Since the hearing on the motion to suppress, defendant stated he received additional statements from the officers involved, as well as statements from witnesses defendant had not been able to interview. The trial court denied the motion to relitigate the issue, finding the evidence was not sufficient to warrant a second motion.

Defendant also filed a motion in limine seeking to exclude any reference at trial to his prior criminal history or probation status, his invocation of his Fifth Amendment right to remain silent, and his prior gang affiliation or tattoos. At the hearing on the motion, the parties discussed a video of the struggle between defendant and Officer Cabriales that was recorded by a bystander acquaintance of defendant's. In the video, the acquaintance refers to defendant by the nickname "Bitter." As to

6

that remark, defense counsel stated, "If that's the audio on the tape of the incident, I would just ask it not be highlighted or referred to by the People in closing as having some significance attached to it that we have no reason to believe that it does. Other than that, if it's just part of it, it's just part of it." The trial court granted the defense motion as to defendant's invocation of his right to remain silent and any prior gang affiliation or tattoos, except with regard to a tattoo on defendant's arm and the "Bitter" nickname audible on the video recording.

### C. Trial

The prosecution called six witnesses at trial, including Officers Cabriales and Felix. It also played a number of videos for the jury, including video from Officer Cabriales's body camera, video from Officer Felix's body camera, and the video recorded by defendant's acquaintance. The defense called one law enforcement officer witness and played additional video footage.

#### 1. Trial testimony concerning defendant's apprehension

At about 7:00 p.m. on May 20, 2018, Officers Cabriales and Felix were patrolling when they observed a Honda parked on the side of the road. The particular cul-de-sac where they encountered the vehicle is a common gang hangout, stolen vehicle dumping ground, and narcotics loitering location. There was visible gang graffiti in the area.

The model of the Honda they observed is one that is often stolen. Three people were sitting in the Honda, and Officer Cabriales observed one of them pass what he believed to be an open container of alcohol to defendant in the back seat. Based on

7

the location and condition of the car, Officer Cabriales thought it was possible the car's occupants were engaged in stripping the car for parts.

Officer Felix used a computer to search the car's license plate number and told Officer Cabriales the vehicle was "recovered stolen," meaning it had been stolen and then recovered and released to the owner. Officer Cabriales found this significant because he previously experienced a situation in which the police's system reported a stolen car had been returned, but the owner of the car still did not have possession of it.

Officer Cabriales stopped the patrol vehicle to investigate. As he and Officer Felix got out of their vehicle and approached, they observed the Honda's hood was up, the front windshield was cracked, and the interior of the vehicle was disheveled. The dash area of the car was loose to the point of almost popping off, the back bumper of the car had collision damage, and it appeared the trunk locking mechanism had been punched.

Inside the Honda, there was a rack of clothing in the back seat. There was a tan can wedged between the passenger seat and driver's seat, which Officer Cabriales believed was an open container of alcohol. The appearance and contents of the car, in the officers' view, were consistent with a stolen car in the process of being stripped or a car in which people were living.

Officer Cabriales spoke to the person sitting in the Honda's driver's seat first and tried to assess the situation and determine who owned the car. The driver was wearing baggy clothing, and Officer Cabriales asked the driver if he had any weapons and performed a pat down search. Officer Cabriales then had the driver step away and told defendant to exit the car, which he did.

(Officer Felix was speaking to the person sitting in the front passenger seat, the sole female occupant of the car.) Defendant was wearing a sweatshirt and repeatedly tried to put his hands in the sweatshirt's pockets. Officer Cabriales asked defendant to keep his hands out of his pockets and informed defendant he was going to pat him down. Defendant told Officer Cabriales he was not violating any laws and protested the legitimacy of the search.

While Officer Cabriales was patting defendant down, he discovered a syringe containing a substance Officer Cabriales believed to be heroin. He then attempted to place defendant in handcuffs for safety purposes. As Officer Cabriales did so, defendant tensed, brought his arms closer together in front of his body, and tried to secure an item in his front sweater pocket. A struggle ensued, with defendant repeatedly attempting to turn and face Officer Cabriales.

As the struggle continued, Officer Cabriales took defendant to the ground with a leg sweep. Defendant landed on his hands and knees, with Officer Cabriales on his back. Defendant then struck Officer Cabriales in the face with his elbow and continued to reach for one of his sweatshirt pockets. Officer Cabriales responded by attempting to strike the side of defendant's head to bring him under control. At some point during the struggle, Officer Cabriales touched the item in defendant's sweatshirt pocket, which felt like a heavy metal object consistent with a firearm. Officer Cabriales asked Officer Felix to use her taser on defendant and she did.

Defendant, however, continued fighting. During the continued struggle, Officer Cabriales saw a firearm fall from defendant's pocket onto the ground. Officer Felix took the firearm and placed it in her back pocket, but at the time, Officer

Cabriales did not know Officer Felix had secured the gun.[5] Officer Cabriales subsequently gained control of defendant's neck and upper body area using what he described as a modified carotid hold.[6] At some point while Officer Cabriales had defendant in the hold, defendant went limp. Officer Cabriales then loosened his hold, but when he did, defendant again began struggling and attempted to turn and face Officer Cabriales.

Eventually, a security guard working nearby came to assist, and Officer Cabriales told him to sit on defendant's legs. The security guard did so as the officers continued trying to put defendant's arms behind his back. The security guard placed his own handcuffs on one of defendant's wrists, and joined it with another set of handcuffs on the other wrist. He then found a knife in defendant's rear pocket. Other police officers later arrived and assisted. Defendant was transported from the scene in an ambulance. The other two occupants of the car were questioned and released.

---

[5] At some point, Officer Felix put out a call for assistance because she feared for their lives. When Officer Cabriales heard Officer Felix request help, he assumed Officer Felix had seen another weapon that defendant was attempting to reach and thought her call meant Officer Felix believed they would be seriously injured or killed.

[6] According to Officer Cabriales, he placed defendant in the hold as a last-ditch effort to avoid shooting him, which Officer Cabriales thought might become necessary because defendant had immediate access to a weapon.

*2.    Evidence and testimony regarding gang graffiti*

During trial, the prosecution introduced photographs depicting gang-related graffiti in the area where defendant was apprehended that was visible to Officer Cabriales as he approached the Honda. It also played the video recorded by defendant's acquaintance in which the acquaintance referred to defendant as "Bitter."

During his testimony, Officer Cabriales identified photographs of gang-related graffiti in the area in which he encountered defendant. In his opinion, some of the graffiti referred to the Florencia 13 criminal street gang. Later in the proceedings, Officer Cabriales also testified he has previously testified as a gang expert in superior court and identified some of the graffiti in the area near the Honda as belonging to the Rollin 60's gang. The prosecution then indicated it intended to replay the acquaintance's video previously shown to the jury.

Defendant objected and the trial court heard argument at sidebar. Defendant argued the prosecution's introduction of evidence regarding gang graffiti in the area violated the court's ruling granting defendant's motion in limine that sought to exclude evidence of defendant's prior gang membership. Defendant additionally argued the video the prosecution was asking to replay referred to defendant by a nickname the jurors could improperly believe was a gang moniker. The prosecution argued the gang graffiti was relevant to show the officer's concerns for safety and the reason for a pat down.

The trial court overruled the defense objection. As to the gang graffiti, the trial court concluded it was probative and relevant to the officers' knowledge at the point they drove up and interacted with the people in the car and the way they handled

11

the situation. The court also noted the video to which the defense was objecting had been played for the jury the previous day without objection, and was thus already before the jury.

### D.     Verdict and Sentencing

The jury convicted defendant on all three counts of the information. The trial court subsequently held a bench trial and found the prosecution proved four prior prison term allegations in the information beyond a reasonable doubt. The court sentenced defendant to six years in prison on count one. It imposed concurrent sentences of six years in prison on counts two and three. The court struck the section 667.5, subdivision (b) allegations regarding the prior offenses for purposes of sentencing and did not impose any sentencing enhancements.

## II.  DISCUSSION

Defendant's contentions related to the propriety of his detention and pat down are unpersuasive. Officer Cabriales observed what he believed to be a violation of the law—namely, defendant receiving an open container of alcohol while in a motor vehicle on a highway. This was sufficient to justify an initial detention, and based on the totality of the circumstances, the subsequent pat down search was justified by concerns for officer safety. Substantial evidence also supports defendant's conviction for resisting an executive officer. The officers were lawfully performing their duties when they detained defendant and they did not use unreasonable force in subduing defendant in light of his continued combativeness.

Two of defendant's three remaining appellate contentions also fail. The trial court did not abuse its discretion by admitting

the gang graffiti evidence because it was relevant to the totality of the circumstances confronting the officers during the detention and pat down and did not tend to suggest defendant was a gang member. The court also did not abuse its discretion in concluding there were no *Pitchess* materials that should be disclosed to the defense. We accept the Attorney General's concession, however, that the trial court's decision to strike the one-year prior prison term sentencing allegations should have been stricken for all purposes, not just for purposes of sentencing, in light of a recent change in law that applies retroactively.

### A.     *The Motion to Suppress*

Defendant contends Officers Cabriales and Felix lacked a reasonable basis for ordering him out of the car and subjecting him to a pat down search. Evaluating this contention requires us to determine both whether the police lawfully detained defendant and whether they lawfully conducted a pat down search for weapons.

### 1.     *Standard of review*

"'In reviewing a suppression ruling, "we defer to the superior court's express and implied factual findings if they are supported by substantial evidence, [but] we exercise our independent judgment in determining the legality of a search on the facts so found."' [Citation.]" (*People v. Tully* (2012) 54 Cal.4th 952, 979.) "Thus, while we ultimately exercise our independent judgment to determine the constitutional propriety of a search or seizure, we do so within the context of historical facts determined by the trial court. 'As the finder of fact . . . the superior court is vested with the power to judge the credibility of

13

the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences in deciding whether a search is constitutionally unreasonable.' [Citation.]  We review its factual findings ""under the deferential substantial-evidence standard."" [Citation.] Accordingly, '[w]e view the evidence in a light most favorable to the order denying the motion to suppress' [citation], and '[a]ny conflicts in the evidence are resolved in favor of the superior court ruling' [citation]. Moreover, the reviewing court 'must accept the trial court's resolution of disputed facts and its assessment of credibility.' [Citation.]"  (*Ibid.*)

### 2. *The officers had a reasonable basis for detaining defendant*

An "officer who lacks probable cause to arrest can conduct a brief investigative detention when there is "'some objective manifestation" that criminal activity is afoot and that the person to be stopped is engaged in that activity.' [Citations.]" (*People v. Celis* (2004) 33 Cal.4th 667, 674; *People v. Dolly* (2007) 40 Cal.4th 458, 463 ["An investigatory detention of an individual in a vehicle is permissible . . . if supported by reasonable suspicion that the individual has violated the law"].) "A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231.)

Officer Cabriales testified he saw the person sitting in the driver's seat of the car pass what appeared to be an open container of alcohol to defendant, who was sitting in the back seat. The trial court expressly credited that testimony and it is

14

sufficient (even without consideration of the other circumstances that hinted criminal activity may be afoot) to establish there was an objective manifestation defendant was engaged in criminal activity—namely, a violation of Vehicle Code section 23223, subdivision (b), which provides "[a] passenger shall not have in the passenger's possession, while in a motor vehicle upon a highway or on lands, as described in subdivision (c) of Section 23220, any bottle, can, or other receptacle containing any alcoholic beverage that has been opened or a seal broken, or the contents of which have been partially removed."

Defendant argues the contrary, citing *People v. Lopez* (1987) 197 Cal.App.3d 93—a case that holds a detention based on Vehicle Code section 23223 was not justified because the defendant was in a car in the parking lot of a public park, which did not fall within the definition of "highway" for purposes of that section. (*Id.* at 99-101.) *Lopez* is inapposite here, however, because defendant concedes he was a passenger in a car parked "on a public street."

Defendant nevertheless contends *Lopez* is instructive because there in fact "was no open container of alcohol," which, to defendant, means Officer Cabriales either testified he observed an open container being passed as a pretense to justify the stop or because he was just mistaken. We do not accept the former of these suppositions because we give due deference to the trial court's finding that Officer Cabriales was a credible witness. (*People v. Williams* (2015) 61 Cal.4th 1244, 1262.) And even if we accept the latter supposition (mistake), that still would not defeat the existence of a proper basis for the detention. (See, e.g., *People v. Espino* (2016) 247 Cal.App.4th 746, 760 [arrest lawful where

15

officers made "good faith mistake of fact" that a diamond in the defendant's pocket was crack cocaine].)

### 3. *The pat down search was lawful*

In *Terry v. Ohio* (1968) 392 U.S. 1 (*Terry*), the Supreme Court held "there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. [Citations.] And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. [Citation.]" (*Id.* at 27, fn. omitted; see also *People v. Avila* (1997) 58 Cal.App.4th 1069, 1074.) A *Terry* pat down search is proper if there is a substantial possibility the person is armed. (*People v. Osborne* (2009) 175 Cal.App.4th 1052, 1061.)

There were a number of factors indicating Officer Cabriales reasonably suspected his safety, and Officer Felix's safety, were in danger. The officers encountered defendant and his companions in an area where cars are frequently stripped and where Officer Cabriales had been sent by gang detail officers to be on the lookout for car stripping. While the location and time of an encounter "are insufficient by themselves to cast reasonable suspicion on an individual" (*People v. Medina* (2003) 110

16

Cal.App.4th 171, 177), the fact that an area "'involved increased gang activity may be considered if it is relevant to an officer's belief the detainee is armed and dangerous'" (*In re Frank V.* (1991) 233 Cal.App.3d 1232, 1241). Officer Cabriales also knew from experience that individuals engaging in car stripping are often armed. He observed the driver pass what he believed to be an open container of alcohol back to defendant. There was thus reason to suspect at least one person had been drinking and might have been under the influence of alcohol. And the officers were outnumbered by the occupants of the car, a circumstance that may justify a pat down search for weapons. (See *People v. Castaneda* (1995) 35 Cal.App.4th 1222, 1230.)

Officer Cabriales cited many of these factors when he explained his reasons for conducting the pat down search at the hearing on the motion to suppress. He specifically mentioned his knowledge of the area, the possibility he was dealing with a car stripping, his inability to verify if the car's occupants were concealing weapons because several of them were wearing loose, baggy clothing, the state of the car's interior, which was disheveled and indicated the dash had been tampered with, and the presence of an open container indicating people had been drinking. Additionally, when defendant exited the car and began speaking with Officer Cabriales, Officer Cabriales noted defendant stood with his hands in his front pockets.

Based on all these observed facts, a reasonably prudent person could appropriately believe his or her safety was in danger and a limited pat down search was warranted. That is all *Terry* requires to justify the stop. Though defendant generally argues the contrary, the only specific argument he advances to challenge the pat down search relates to the nature of his probationary

17

status at the time of the encounter, a status of which the officers were not aware. Because we do not consider that factor in concluding the pat down was justified under the circumstances, we need not address the point.

B. *Substantial Evidence Supports Defendant's Conviction for Resisting Arrest*

When we consider a challenge to the sufficiency of the evidence to support a criminal conviction, we review the record "'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Westerfield* (2019) 6 Cal.5th 632, 713; see also Evid. Code, § 411; *People v. Jones* (2013) 57 Cal.4th 899, 963-964 [testimony of a single witness suffices to support a conviction unless physically impossible or inherently improbable].)

Section 69, the pertinent statute of conviction, provides "[e]very person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment pursuant to subdivision (h) of Section 1170, or in a county jail not exceeding one year, or by both such fine and imprisonment." Defendant argues there is insufficient evidence to support his conviction under this section because there is no substantial evidence the officers were performing lawful duties; in defendant's view, the officers had no

18

legal justification to detain defendant. Defendant also argues the evidence is insufficient because the officers used excessive or unreasonable force.

Defendant's first contention fails for essentially the same reason the trial court properly denied the motion to suppress. At trial, Officer Cabriales testified he saw the driver hand defendant an open container that the officer believed was an open container of alcohol. This is substantial evidence Officer Cabriales had cause to detain defendant. Defendant contends it was "patently unreasonable" for any juror to accept Officer Cabriales's testimony that he observed an open container of alcohol because he did not share his observation with Officer Felix, did not mention the open container to defendant or the other occupants of the car, and could not recall if defendant smelled of alcohol. Defendant again asks us to reweigh the evidence and reach a different credibility determination than the one the jury impliedly reached. That is inconsistent with the governing standard of review.

Defendant's second insufficient evidence theory is also unmeritorious because substantial evidence supports the jury's implied finding that the officers' use of force was reasonable. "[W]hen an officer uses excessive force in making an arrest or detention, the officer is not engaged in the lawful performance of his or her duties." (*People v. Williams* (2018) 26 Cal.App.5th 71, 73.) "The reasonableness of a particular use of force is judged from the perspective of a reasonable officer on the scene, not by the 20/20 vision of hindsight. The inquiry is an objective one: Was the officer's action objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation? [Citation.] [This] is a pure

19

question of fact . . . ." (*In re Joseph F.* (2000) 85 Cal.App.4th 975, 989.)

Defendant does not contend the officers' use of force was unreasonable during the entire incident. Nor does he pinpoint exactly when he believes the use of force became unreasonable, instead arguing that "[s]omewhere between" Officer Cabriales hitting defendant in the head, Officer Felix tasing defendant, and Officer Cabriales using a "chokehold" on defendant "even after the gun was recovered and placed out of [defendant's] reach, a line was crossed from possibly reasonable force to absolutely excessive and unreasonable force."

Officer Cabriales testified that once he began attempting to handcuff defendant, defendant tensed and resisted his attempts, trying to bring his arms toward the front of his body and turning to face Officer Cabriales. Officer Cabriales performed a leg sweep and took defendant to the ground, at which point defendant struck Officer Cabriales in the face with his elbow. Officer Cabriales struck defendant in the head but defendant continued to resist and attempt to secure an item in his front sweater pocket. He continued struggling even after Officer Felix tased him.

A gun fell from defendant's pocket to the ground. Officer Cabriales knew the gun had fallen, but he did not know precisely when his partner recovered the gun. Believing defendant had access to a weapon (or additional weapons), Officer Cabriales put him in what he characterized as a modified carotid restraining hold. Throughout, defendant continued to fight. Officer Felix feared for their lives, and so made a call to request help, which is an extreme request for an officer to make. Additionally, all of

this took place in what Officer Cabriales knew to be a generally dangerous location, with a significant amount of gang activity.

Under the circumstances, there is substantial evidence supporting the jury's implied finding that the officers' actions were objectively reasonable. Defendant struggled against Officer Cabriales's attempt to handcuff him from the beginning. The altercation escalated when defendant struck Officer Cabriales in the head and when the officers became aware a gun had fallen from defendant's pocket. At least one of the officers, Officer Cabriales, did not know precisely when the gun was secured out of defendant's reach. In addition, defendant was tased twice and still continued fighting, the officers had reason to believe defendant was then under the influence of alcohol, and defendant was strong enough and his resistance significant enough that the two officers were unable to subdue him alone. These facts are substantial evidence supporting the jury's determination that the escalating use of force was reasonable.

### C. The Trial Court Did Not Abuse Its Discretion by Admitting the Gang Graffiti Evidence

Evidence is generally admissible if its probative value is not substantially outweighed by the probability that it will unduly consume time, "create substantial danger of undue prejudice," confuse the issues, or mislead the jury. (Evid. Code, § 352.) Evidence is probative if it "tends 'logically, naturally, and by reasonable inference' to establish material facts such as identity, intent, or motive. [Citations.]" (*People v. Garceau* (1993) 6 Cal.4th 140, 177, overruled on another ground in *People v. Yeoman* (2003) 31 Cal.4th 93, 117-118.) Although gang-related evidence may have a "'highly inflammatory'" impact (*People v.*

21

*Samaniego* (2009) 172 Cal.App.4th 1148, 1167 (*Samaniego*)), it "is often relevant to, and admissible regarding, the charged offense." (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049.) Gang-related evidence may be admitted "if it is relevant to a material issue in the case other than character, is not more prejudicial than probative, and is not cumulative." (*Samaniego*, *supra*, at 1167.) "[T]he decision on whether evidence, including gang evidence, is relevant, not unduly prejudicial and thus admissible, rests within the discretion of the trial court." (*People v. Albarran* (2007) 149 Cal.App.4th 214, 224-225 (*Albarran*).) We review the trial court's ruling for abuse of discretion. (*Id.* at 225.)

Here, the gang graffiti evidence admitted was relevant to whether Officer Cabriales was reasonably concerned for officer safety—his own and Officer Felix's—when he detained defendant and patted him down. Though not dispositive on its own, the location of the encounter between the officers and defendant, including the presence of gang graffiti, was relevant to establishing the facts known to the officers when investigating the situation and assessing potential threats to their safety.

Additionally, we do not find the gang evidence was unduly prejudicial. "Prejudice" in the context of this statute "is not synonymous with 'damaging': it refers to evidence that poses an intolerable risk to the fairness of the proceedings or reliability of the outcome." (*People v. Booker* (2011) 51 Cal.4th 141, 188.) Undue prejudice is that which "'uniquely tends to evoke an emotional bias against a party as an individual, while having only slight probative value with regard to the issues.'" (*People v. Robinson* (2005) 37 Cal.4th 592, 632, quoting *People v. Crittenden* (1994) 9 Cal.4th 83, 134.)

22

The gang graffiti evidence did not tend to evoke an emotional bias against defendant. The prosecution's questioning centered around gang graffiti in the area in an effort to support Officer Cabriales's statement that it was a high-crime area. The prosecution did not argue or suggest defendant was a gang member himself. Indeed, the only evidence that might have suggested defendant was a gang member was the video taken by defendant's acquaintance in which he referred to defendant as "Bitter." The prosecution informed the jury "Bitter" was defendant's nickname. It neither commented on the nature of the nickname nor established or implied the nickname was a gang moniker. Moreover, defendant did not object when the video was first played, and the transcript was distributed to the jury. Any objection to the admission of that evidence, in particular, was forfeited.

We similarly reject the associated contention that admission of the gang graffiti evidence rendered the trial fundamentally unfair. "'As a general matter, the ordinary rules of evidence do not impermissibly infringe on the accused's right to present a defense.'" (*People v. Hawthorne* (1992) 4 Cal.4th 43, 58.) The mere erroneous exercise of discretion under ordinary rules of evidence does not implicate the federal Constitution. (*People v. Cudjo* (1993) 6 Cal.4th 585, 611.) To prove a deprivation of federal due process rights, defendants must satisfy a high constitutional standard to show that the erroneous admission of evidence resulted in an unfair trial. "Only if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due process. Even then, the evidence must 'be of such quality as necessarily prevents a fair trial.' [Citations.] Only under such circumstances can it be

inferred that the jury must have used the evidence for an improper purpose." (*Jammal v. Van de Kamp* (9th Cir. 1991) 926 F.2d 918, 920; *Albarran, supra*, 149 Cal.App.4th at 232.) Here, permissible inferences were available to the jury. As already explained, the photos and testimony concerning gang graffiti was relevant to demonstrate the circumstances that confronted the officers when they encountered defendant and the others in the car.

### D.     *The* Pitchess *Ruling Is Not Erroneous*

The trial court held in camera *Pitchess* proceedings to consider whether there were any issues of credibility, fabrication of evidence, dishonesty in report writing, and excessive force for Officers Cabriales and Felix. The trial court held three in camera hearings to examine records of any complaints made against the officers. The trial court did not order disclosure of any discoverable material to the defense.

At defendant's request, we have reviewed the sealed transcripts of the in camera proceedings. (See generally *People v. Mooc* (2001) 26 Cal.4th 1216, 1228-1232.) The transcripts of the in camera hearings constitute an adequate record of the trial court's review of any documents it received. There was no abuse of discretion in determining there were no records that should be disclosed to the defense.

### E.     *The Prior Prison Term Enhancements*

Effective January 1, 2020, Senate Bill No. 136 amended section 667.5, subdivision (b) to provide that its one-year prior prison term sentencing enhancement applies only to sexually violent offenses, as defined in Welfare and Institutions Code

24

section 6600, subdivision (b). (*People v. Jennings* (2019) 42 Cal.App.5th 664, 681 (*Jennings*); *People v. Lopez* (2019) 42 Cal.App.5th 337, 340-341 (*Lopez*).) The trial court here found true four prior prison term sentencing enhancement allegations in the information but struck the enhancements for purposes of sentencing.

Defendant argues, and the Attorney General agrees, that Senate Bill No. 136 applies retroactively to defendant because his sentence is not final. (See *Jennings*, *supra*, 42 Cal.App.5th at 682 ["Senate Bill No. 136's . . . amendment to section 667.5, subdivision (b) applies retroactively to all cases not yet final as of its January 1, 2020, effective date"]; *Lopez*, *supra*, 42 Cal.App.5th at 341-342 [applying Senate Bill No. 136 retroactively].) Both parties also agree that none of the convictions underlying defendant's prior prison term enhancement allegations constitutes a sexually violent offense identified in Welfare and Institutions Code section 6600, subdivision (b), and therefore the prior prison term sentencing enhancements cannot be imposed in this case. Defendant also argues, and the Attorney General again agrees, that the trial court should have stricken all four one-year prior prison term enhancements for all purposes, rather than just for sentencing.

Although the trial court struck the four prior prison term sentencing enhancements for purposes of sentencing, the trial court confirmed its true findings as to those enhancements at the sentencing hearing. The true findings on the enhancements are also confirmed in the court's minutes. As those enhancements cannot be true as to defendant given the change in the law, they must be stricken for all purposes. Because the trial court is not vested with any new discretion regarding sentencing, there is no

25

reason to remand the matter. We will modify the judgment to strike the true findings as to the four prior prison term sentencing enhancements.

## DISPOSITION

The judgment is modified to strike in their entirety the true findings on defendant's prior prison term sentencing enhancement allegations. The judgment is affirmed as so modified and the trial court shall prepare a corrected abstract of judgment and deliver it to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

RUBIN, P. J.

MOOR, J.

26