**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

VICTOR MANUEL RAMIREZ, AKA Pato,

*Defendant-Appellant*.

No. 22-50045

D.C. No.
8:20-cr-00134-SVW-1

OPINION

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted November 13, 2023
Pasadena, California

Filed April 18, 2024

Before: Barrington D. Parker, Jr.,* Jay S. Bybee, and
Kenneth K. Lee, Circuit Judges.

Opinion by Judge Lee

---

* The Honorable Barrington D. Parker, Jr., United States Circuit Judge for the U.S. Court of Appeals for the Second Circuit, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed the district court's denial of a motion to suppress in a case which the defendant contended that a police officer impinges on the Fourth Amendment by asking about parole status during a traffic stop.

The defendant argued that asking about parole status gives the police license to search a parolee—who typically agrees to future searches as a condition of his release—for general criminal activity unrelated to the traffic stop. The panel held that asking about parole status during a traffic stop does not offend the Fourth Amendment because the question reasonably relates to the officer's safety and imposes a negligible burden.

The panel remanded in part so that the district court can, as the government agrees, correct the written judgment to conform it to the oral pronouncement of sentence.

### COUNSEL

Deborah E. Gonzalez (argued), Deputy Federal Public Defender; Caroline S. Platt, Assistant Federal Public Defender; Cuauhtemoc Ortega, Federal Public Defender; Federal Public Defender's Office, Los Angeles, California; for Defendant-Appellant.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Michael J. Morse (argued), Assistant United States Attorney, Public Corruption and Civil Rights Section; Bram M. Alden, Assistant United States Attorney, Chief, Criminal Appeals Section; E. Martin Estrada, United States Attorney; United States Department of Justice, Office of the United States Attorney, Los Angeles, California; for Plaintiff-Appellee.

## OPINION

LEE, Circuit Judge:

Can a police officer during a traffic stop ask someone if he is on parole? Appellant Victor Ramirez contends that asking that question impinges on the Fourth Amendment because it gives the police license to search a parolee—who typically agrees to future searches as a condition of his release—for general criminal activity unrelated to the traffic stop. We disagree and hold that an officer may ask about parole status because it reasonably relates to the officer's safety and imposes a negligible burden.

We thus affirm the denial of Ramirez's motion to suppress the loaded firearm found during the traffic stop. We also remand in part so that the district court can conform its written sentence to its oral pronouncement, a request the government does not oppose.

## BACKGROUND

In July 2020, Officers Dorin Buchanan and Patrick Marshal pulled over Victor Ramirez after witnessing him speed in a residential neighborhood, fail to stop at a stop sign, and not use a turn signal. Before pulling Ramirez over,

one of the officers recognized him as a gang member based on an earlier encounter.

After Ramirez stopped his car, Officer Buchanan approached and immediately asked: "What's up my man? You on probation or parole?" Ramirez answered, "Parole." Officer Buchanan then asked, "For what?" and Ramirez responded, "For a firearm."

Officer Buchanan followed up with a few more questions, including when he last checked in with his parole officer, where he lived, whose car he was driving, and what he was doing in the area. During this exchange, Officer Buchanan could see that Ramirez had several gang-related tattoos. And based on those tattoos, Officer Buchanan claimed to know that Ramirez was in an area populated by rival gang members. Officer Buchanan testified that it would be "uncommon" for a rival gang member to be in the area "without a firearm."

Officer Buchanan instructed Ramirez to turn off the car. He then asked, "You don't got to reach for it, but do you have a driver's license?" Ramirez stated he did but that it was not with him. Next, Officer Buchanan asked Ramirez to put his right hand on the back of his head and unbuckle his safety belt with his left hand.

While Ramirez's right hand was on his head and his left hand was hanging out the car window, Officer Buchanan asked Ramirez if he had a "strap" on him. Ramirez answered, "To be honest with you, I do." Officer Buchanan responded, "It is, what it is. A man like you is not going to drive through that neighborhood without a strap, you feel me?" Ramirez then informed Officer Buchanan that the gun was in the glove compartment of the car.

Once Ramirez was out of the car, the officers retrieved a loaded 9mm semiautomatic pistol from the glove compartment. Officers also checked the computer system in their patrol car and confirmed that Ramirez was on parole.

A federal grand jury indicted Ramirez for possessing a firearm and ammunition as a felon, in violation of 18 U.S.C. § 922(g)(1). Ramirez moved to suppress the gun and ammunition, arguing that the officers unreasonably prolonged the stop by "engaging in a fishing expedition for hypothetical criminal activity rather than addressing the purported reason for the traffic stop."

At the hearing on Ramirez's motion to suppress, Officer Buchanan testified that he asked Ramirez whether he was on probation or parole "[f]or officer safety and to confirm [his] suspicion that [Ramirez] was actively on parole." When asked how a person being on parole relates to officer safety, Officer Buchanan responded: "Generally, someone who is on parole has been to prison. They have been released from the prison systems. . . . So they had previously violated some sort of law . . . [been] found guilty, convicted, sentenced to a prison term, released, and whatever that crime was could be a violent crime, a weapons possession or something of that nature."

In an earlier declaration, Officer Buchanan stated that it is his "practice" to try to confirm a person's parole status when interacting with people he knows have been on parole. In the next sentence he also explained that he knows that people on parole are "subject to search and seizure by any law enforcement officer, at any time of the day or night, without a warrant, reasonable suspicion, or probable cause."

The district court denied Ramirez's motion to suppress, and Ramirez pleaded guilty to possessing a firearm and

ammunition as a felon. As part of the plea agreement, Ramirez reserved his right to challenge the district court's denial of his motion to suppress and withdraw his guilty plea should he prevail. The district court sentenced Ramirez to 63 months in prison.

## STANDARD OF REVIEW

"We review the district court's denial of a motion to suppress de novo and its factual findings for clear error." *United States v. Taylor*, 60 F.4th 1233, 1239 (9th Cir. 2023), *cert. denied*, No. 23-5743, 2024 WL 674890 (Feb. 20, 2024).

## ANALYSIS

**I.  Officer Buchanan did not violate Ramirez's Fourth Amendment rights by asking him if he was on parole.**

### A.  Police officers may prolong a traffic stop to attend to safety concerns.

When the police pull someone over for a traffic violation, the officer can obviously investigate that traffic infraction. *Rodriguez v. United States*, 575 U.S. 348, 354 (9th Cir. 2015) (analogizing a traffic stop to a *Terry* stop). But a traffic stop "exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Id.* at 350. Thus, "[t]o be lawful, a traffic stop must be limited in its scope." *Taylor*, 60 F.4th at 1239 (citing *Rodriguez*, 575 U.S. at 354–55).

Besides investigating the traffic violation that warranted the stop, a police officer can also make "ordinary inquiries incident to the traffic stop" and "attend to related safety

concerns." *Id.* (quoting *Rodriguez*, 575 U.S. at 354–55).[1] The Supreme Court has held that lawful "inquiries incident to a traffic stop" may include "checking [a] driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez*, 575 U.S. at 355. The Court has also held that "attend[ing] to related safety concerns" includes "certain negligibly burdensome precautions in order to complete his mission safely." *Id.* at 354, 356. So, for example, an officer may order the driver of a vehicle to exit the vehicle during a traffic stop. *Id.* at 356 (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977) (per curiam) ("Establishing a face-to-face confrontation diminishes the possibility, otherwise substantial, that the driver can make unobserved movements; this, in turn, reduces the likelihood that the officer will be the victim of an assault.")).

Following such guidance, this court has held that an officer may extend a traffic stop to conduct "a criminal history check" because it "is a negligibly burdensome precaution required for officer safety." *United States v. Hylton*, 30 F.4th 842, 846 (9th Cir. 2022). An officer may not, however, extend a traffic stop to run an "ex-felon registration check"—*i.e.*, a computer check to ensure that a felon is properly registered under state law—because such a check "in no way advance[s] officer safety." *United States v. Evans*, 786 F.3d 779, 787 (9th Cir. 2015). Similarly, this court has held that an officer may not extend a traffic stop to demand identification from a passenger where "knowing

---

[1] An officer may prolong the stop further if further detention is supported by reasonable suspicion of a crime independent of the basis for the stop. *Rodriguez*, 575 U.S. at 357–58.

[the passenger's] name would not . . . ma[ke] the officers any safer." *United States v. Landeros*, 913 F.3d 862, 868 (9th Cir. 2019). An officer, however, may extend a traffic stop to ask about weapons. *Taylor*, 60 F.4th at 1240.

## B. Asking Ramirez whether he was on parole reasonably relates to officer safety.

Officer Buchanan did not violate Ramirez's Fourth Amendment right when he asked about his parole status because it is a negligibly burdensome measure that reasonably relates to officer safety. *Rodriguez*, 575 U.S. at 356.

The Supreme Court has recognized that officer safety "stems from the mission of the stop itself" because "[t]raffic stops are especially fraught with danger to police officers, so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely." *Id.* (quotation marks and citations omitted). And in assessing potential risks involved in a traffic stop, it is useful for a police officer to know if the person remains on parole because a parolee has committed a crime serious enough to have merited prison time. To be sure, a parolee may not necessarily be more dangerous than a non-parolee. For example, someone may have served time for a serious but non-violent crime such as tax fraud. But all else being equal, it is reasonable for a police officer to consider taking additional precautions when dealing with someone who served prison time. Officer Buchanan's encounter with Ramirez underscores the potential dangers during a traffic stop. Faced with a parolee (who, it turned out, had a loaded gun in the car), Officer Buchanan took precautions in dealing with Ramirez (*e.g.*, asking him not to reach for his driver's

license, directing him to put his right hand behind his back when unbuckling his seat belt).

Asking someone about his parole status is substantially similar to running a criminal history check during a traffic stop—a practice that we have held passes muster under the Fourth Amendment. *See Hylton*, 30 F.4th at 848 (allowing criminal history checks during traffic stops for officer safety reasons). Indeed, a person's criminal history and parole status are inextricably intertwined such that running a criminal history check will, in many jurisdictions, reveal a person's parole status. If anything, parole status may reveal more about potential danger than a criminal background check: a parolee has committed a serious enough crime to warrant prison time and has likely been released recently, while a criminal history check may yield a stale history of minor offenses committed years ago.[2]

Ramirez relies on *United States v. Evans* to contend that a parole status inquiry is like an impermissible "ex-felon registration check" during a traffic stop. 786 F.3d at 787–88 (holding that ex-felon registration check violates the Fourth Amendment). But *Evans* was based on the conclusion that whether someone complied with a procedural reporting law (for a crime that may have been committed years ago) does not "advance[] officer safety." *Id.* at 787. As we explained in *Hylton*, whether "a felon is properly *registered* is less related to officer safety than whether someone is a felon at

---

[2] We need not decide whether Officer Buchanan's question about whether Ramirez was on probation runs afoul of the Fourth Amendment because the police searched him and his car based on his parole status. *See Hudson v. Michigan*, 547 U.S. 586, 592 (2006) (requiring causal link between alleged Fourth Amendment violation and the discovery of contested evidence).

all. That's why a felon registration check is a measure aimed at detecting evidence of ordinary criminal wrongdoing." *Hylton*, 30 F.4th at 847–48 (emphasis added) (quotation marks and citation omitted). In contrast, asking whether someone recently served prison time—like running a criminal background check—reasonably relates to officer safety. *See id.*

Rodriguez also seizes on Officer Buchanan's statement that he knows that parolees can be searched for any reason, arguing that the officer likely asked about parole status as a pretext to justify a search. But that possibility does not negate that officer safety is still a legitimate rationale for asking about parole status. And as in other Fourth Amendment contexts, the question is whether the officer's actions were "objectively reasonable in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (quotation marks omitted). And as explained earlier, it was objectively reasonable for Officer Buchanan to ask about Ramirez's parole status to ensure his safety. We thus hold that asking someone about his parole status during a traffic stop does not offend the Fourth Amendment.

## II. Ramirez's case must be remanded in part so that the district court may correct the written judgment and commitment.

"When there is a discrepancy between an unambiguous oral pronouncement of a sentence and the written judgment, the oral pronouncement controls." *United States v. Fifield*, 432 F.3d 1056, 1059 n.3 (9th Cir. 2005) (citing *United States v. Bergmann,* 836 F.2d 1220, 1222 (9th Cir. 1988)). Here, the government agrees with Ramirez that "the district court's

written judgment should be corrected to conform to its oral pronouncement of the sentence." We thus remand to the district court so that identified discrepancies may be corrected.

## CONCLUSION

We **AFFIRM** the district court's denial of Ramirez's motion to suppress and **REMAND IN PART** only to permit the district court to correct its written judgment and commitment so that it conforms to its oral pronouncement of sentence.