Filed 6/2/26; Certified for Partial Publication 6/25/26 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re I.H., a Person Coming Under the Juvenile Court Law.<br><br>THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>I.H.,<br><br>     Defendant and Appellant. | E084852<br><br>(Super. Ct. No. J301714)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County. Geraldine Williams, Judge. Affirmed.

Stephanie A. Lickel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting, and Maxine Hart, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I.

## INTRODUCTION

When executing an arrest warrant for a fugitive suspect from Iowa named Victor Delgadillo, state and federal law enforcement officers mistakenly identified defendant and appellant I.H. as Delgadillo. They repeatedly told I.H. to get on the ground, but he did not comply and instead raised his hands and stood still. When I.H. moved his hands toward his torso, the officers apprehended him, pushed him to the ground, and handcuffed him. After taking off I.H.'s hat and shining a flashlight in his face, the officers realized I.H. was not Delgadillo. Moments later, an officer asked I.H. if he had any weapons, and he indicated he had one in his waistband. The officer then found a firearm in I.H.'s waistband.

The People filed a wardship petition alleging that I.H. carried a loaded, stolen firearm in public (Pen. Code, § 25850, subd. (c)(2); count 1)[1] and possessed a firearm as a minor (§ 29610; count 2). After unsuccessfully moving to suppress evidence of the firearm, I.H. admitted count 1 and the People dismissed count 2. I.H. was adjudged a ward of the court and placed on probation.

---

[1] All further statutory references are to the Penal Code.

I.H. contends the juvenile court erroneously denied his motion to suppress and he received ineffective assistance of counsel (IAC).  We disagree and affirm.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A. *I.H.'s Arrest*

Deputy U.S. Marshal Koontz contacted the Ontario, California Police Department's Multi-Enforcement Team (MET) for assistance with the arrest of Delgadillo, who was wanted for murder in Iowa.  Several MET officers were briefed about the suspect and told that there was an active arrest warrant in Iowa for Delgadillo's arrest.  Deputy Koontz also told the officers that the U.S. Marshals Service believed that Delgadillo might be in a hotel in Colton, California.

The arrest team, composed of several MET Officers and U.S. Marshals, gathered in a hotel room across the hall from a hotel room where Delgadillo was believed to be staying (room 205).  While there, Deputy Koontz positively identified the occupant of the room as Delgadillo and described his appearance and clothing.

One of the MET officers saw two males leave room 205, one of whom (I.H.) fit Delgadillo's description.  As the males walked down the stairs to exit the building, officers in a car outside drove to the males' location.

When the officers approached the males in their vehicle, they turned on the lights and sirens, then exited the vehicle while brandishing their firearms and ordering the males to get on the ground. The male believed to be Delgadillo (I.H.) did not comply, so the officers ordered him to get on the ground again. He raised his hands, but then began to lower them toward his torso, so a MET officer pushed him to the ground, pinned him, and handcuffed him with another officer's assistance.

The officers sat the suspect upright, took off his hat, and shined a flashlight in his face. The officers realized he was not Delgadillo. Moments later, one of the officers asked I.H. if he had any weapons, and he nodded toward his waistband. As that officer searched I.H., he found a nine-millimeter handgun concealed in I.H.'s waistband. I.H. told the officers his name, and they confirmed he did not have tattoos on his arms that matched Delgadillo's tattoos. The officers then arrested I.H.

B. *The Officers' Testimony*

MET Officers Josephy Reyna, Matthew Reed, and Jorge Palacio participated in I.H.'s arrest and testified at the motion to suppress hearing.

Officer Reyna testified that he and other officers were in the hotel room across from room 205. He did not know the specifics of the Delgadillo warrant, but Deputy Koontz gave him a description of Delgadillo while they were in the hotel room, which included his height, weight, race, hair color, tattoos, and clothing. Officer Reyna also saw a picture of Delgadillo at some point. One of the males who exited room 205 (I.H.) matched Delgadillo's description. At that point, Deputy Koontz made a "positive

4

identification" of Delgadillo (which turned out to be I.H.), so the team of several officers decided to arrest him. The decision to arrest him was therefore based on Deputy Koontz's description of Delgadillo and I.H.'s matching that description, not information from a warrant.

Like Reyna, Officer Reed testified that he never saw an arrest warrant for Delgadillo, so all information about Delgadillo came from Deputy Koontz. Deputy Koontz told Officer Reed that Delgadillo was a "Hispanic male, 18[] or 20s, wearing a black sweater, dark-color hat[,] and sunglasses." Deputy Koontz "positively identified" Delgadillo as one of the males leaving room 205, and Officer Reed concurred that he matched the description of Delgadillo provided by Koontz. Officer Reed was one of the two officers who "made contact" with I.H. and arrested him. Officer Reed estimated about 15 to 20 minutes elapsed between when Deputy Koontz identified Delgadillo as one of the males leaving room 205 and when the officers handcuffed I.H. and realized he was not Delgadillo.

Officer Palacio testified that he likewise received all information about Delgadillo from Deputy Koontz and did not receive any information from a warrant. As with the other officers, he was given a general description of Delgadillo and the clothes he was wearing. Officer Palacio was one of the arresting officers. He estimated about two minutes elapsed between when he saw the two males in the hallway and when he approached them in the vehicle.

C. *Motion to Suppress Proceedings*

I.H. filed a motion to suppress, arguing that his warrantless search and seizure were unreasonable for two reasons. I.H. first argued that the police reports did "not provide *any* information on where the description of the suspect came from," and "[t]he prosecution cannot rely on hearsay information to establish probable cause" under the *Harvey-Madden* rule.[2] "If the officers relied on hearsay information, [I.H.] demand[ed] the identity and location of all declarants with material information and demand[ed] their presence at the motion to suppress [hearing]." Second, the police reports did not state Delgadillo's description with sufficient particularity, so it cannot be "determine[d] whether the officers were justified in detaining [I.H.]."

At the outset of the motion to suppress hearing, the juvenile court stated that a probation report indicated that the officers were executing two warrants. The court thus asked the parties "what exactly the situation is for the warrant." The prosecutor responded that the testifying MET officers were assisting U.S. Marshals with apprehending Delgadillo, who was wanted for murder in Iowa. Defense counsel stated that there were "six reports, and most of them just say that 'We are assisting with a homicide out of the state of Iowa,'" although one "mention[ed] that there may have been a warrant."

---

[2] See *People v. Harvey* (1958) 156 Cal.App.2d 516, 523-524 (conc. opn. of Dooling & Draper, JJ.); *Remers v. Superior Court* (1970) 2 Cal.3d 659, 666; *People v. Madden* (1970) 2 Cal.3d 1017, 1021.

The juvenile court explained that it would treat I.H.'s motion as made under section 1538.5, subdivision (a)(1)(B) (challenging a seizure or search *with* a warrant as unreasonable) instead of section 1538.5, subdivision (a)(1)(A) (challenging a seizure or search *without* a warrant as unreasonable), because "this is not a warrantless search." The court thus told I.H. he bore the initial burden of proving the "warrant was unreasonable."

After the parties examined Officers Reyna and Reed, the juvenile court revisited the basis for I.H.'s motion and the parties' respective burdens. The court stated that the parties conveyed at the beginning of the hearing that there were two warrants (one for Delgadillo and one for I.H.), but it now appeared to the court that there was no warrant for I.H. The parties confirmed that there was only a warrant for Delgadillo.

The juvenile court then asked if the parties wanted "to make any motions on the record . . . as to the burden of proof and the procedural or to reopen, if you will." The court noted that it had wrongly stated at the beginning of the hearing that there was a warrant for I.H. and that his motion was brought under section 1538.5, subdivision (a)(1)(B). The court continued that it had incorrectly said "the burden had been with the defense," but that the court was "making a correction" and putting the initial burden on the prosecution because there was no warrant for I.H. The court then again asked the parties if they wanted to "reopen." Both parties declined, and the hearing resumed with Officer Palacio's testimony.

After Officer Palacio completed his testimony, the court invited closing argument. The court explained that "it is clear" the prosecutor "bears a burden," and directed her to go first.

After hearing from the parties, the juvenile court denied I.H.'s motion to suppress. The court reasoned that there "had been [a] good faith, mistake of fact in [the] execution of the warrant . . . until . . . [I.H.'s] identity was ultimately verified." That occurred, the court continued, after the arresting officers' "independent observation" of I.H.'s violation of section 148 (resisting arrest).

## III.

## DISCUSSION

I.H. contends the juvenile court erroneously denied his motion to suppress because the officers lacked probable cause to arrest and search him. He also contends he received IAC because his attorney did not request a new hearing or ask for any other "corrective action" when the juvenile court noted it had started off the hearing by erroneously putting the initial burden on him.

We disagree with both points. Because the officers had probable cause to arrest Delgadillo and reasonably mistook I.H. for him, the arrest was valid. (See *Hill v. California* (1971) 401 U.S. 797, 802.) As to the subsequent search, the juvenile court properly found that the officers were justified in searching I.H. incident to a lawful arrest for resisting arrest. Finally, I.H.'s counsel was not ineffective because the juvenile court did not misallocate the initial burden, which it properly placed on the prosecution.

8

A. *Standard of Review*

We defer to the trial court's findings of fact in ruling on a suppression motion if supported by substantial evidence. (*People v. Glaser* (1995) 11 Cal.4th 354, 362.) But we exercise our "'independent judgment,'" based on those factual findings, to determine whether a seizure or search was reasonable. (*People v. Castro* (2022) 86 Cal.App.5th 314, 319.) When, as here, the trial court denied a motion to suppress, we review the record in the light most favorable to the People. (*People v. Suff* (2014) 58 Cal.4th 1013, 1053.) Our review "is confined to the correctness or incorrectness of the trial court's ruling, not the reasons for its ruling." (*People v. Dimitrov* (1995) 33 Cal.App.4th 18, 27.)

B. *Arrest*

The prosecution bore the burden of proving that (1) it had probable cause to arrest Delgadillo and (2) the officers reasonably mistook I.H. as Delgadillo. (*Wilder v. Superior Court* (1979) 92 Cal.App.3d 90, 96.) The juvenile court properly found that the prosecution met this burden.

"Probable cause" exists when the facts would lead a person of "'ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion of the guilt of the accused.'" (*People v. Campa* (184) 36 Cal.3d 870, 879.) "[A]n officer may rely on the 'collective knowledge' of law enforcement to establish probable cause to arrest." (*People v. Alcorn* (1993) 15 Cal.App.4th 652, 655.) That reliance, however, must be reasonable, and the prosecution must prove that the arrest was "constitutionally valid." (*Id.* at p. 656.)

The MET officers here reasonably relied on Deputy Koontz's information. During an official briefing before the hotel operation, Deputy Koontz told MET officers that Delgadillo was wanted for murder in Iowa and there was a warrant for his arrest. At the hotel, Deputy Koontz identified I.H. as Delgadillo. Nothing in the record suggests that Deputy Koontz's information about Delgadillo was unreliable or that it was unreasonable for the MET officers to rely on it. The MET officers reasonably relied on Deputy Koontz's briefing and "intel," which gave them probable cause to arrest Delgadillo. (See *People v. Suennen* (1980) 114 Cal.App.3d 192, 201, fn. 2; *Hewitt v. Superior Court* (1970) 5 Cal.App.3d 923, 930 ["An officer's testimony that he received reliable information from his office that a warrant existed would be sufficient to establish probable cause for an arrest."].)

The officers also reasonably mistook I.H. to be Delgadillo. The arrest warrant for Delgadillo described him as a Hispanic male in his late teens or early 20s, about six feet tall, with brown or black hair and brown eyes. I.H. largely matched that description: he was 17 at the time of his arrest, about six feet tall, and has black hair and brown eyes. Deputy Koontz and his team determined that Delgadillo was at the hotel where I.H. was arrested. And while at the hotel, Deputy Koontz positively identified I.H. as Delgadillo when I.H. exited room 205.

10

Given these circumstances, the officers understandably believed I.H. was Delgadillo. That reasonable mistake provided them with valid grounds to arrest I.H. (See *Hill v. California*, *supra*, 401 U.S. at p. 802 ["'[W]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest.'"].)

C. Harvey-Madden

I.H. concedes that the officers permissibly relied on the information relayed to them by Deputy Koontz when arresting I.H. But he contends the *Harvey-Madden* rule required the prosecution to prove that Deputy Koontz's information was reliable by producing Delgadillo's arrest warrant or by having Deputy Koontz testify. Because the prosecution did neither, I.H. argues the *Harvey-Madden* rule precluded the prosecution from relying on the officers' testimony about what Deputy Koontz relayed to them. We conclude I.H. forfeited the argument.

The *Harvey-Madden* rule is the result of a "set of state law evidentiary rules governing the manner in which the prosecution may establish grounds for a challenged stop or search." (*People v. Romeo* (2015) 240 Cal.App.4th 931, 943, fn. omitted.) "In its most conventional application, the *Harvey-Madden* rule is, in effect, nothing more than the hearsay rule adapted specifically to motions to suppress." (*Id*. at p. 944.)

Thus, a *Harvey-Madden* objection is an evidentiary objection. Although I.H. raised the issue in his written motion to suppress, he did not press for or obtain a ruling on it at the motion to suppress hearing. In fact, he did not even mention the issue at the hearing. "'[W]hen, as here, the defendant does not secure a ruling, he does not preserve the point. That is the rule. No exception is available.'" (*People v. Bolden* (2002) 29 Cal.4th 515, 542; see also *People v. Mitchell* (1990) 222 Cal.App.3d 1306 [issue raised in written motion to suppress but not pursued at suppression hearing forfeits issue on appeal].)

D. *Search*

The arresting officers testified that, when they confronted I.H. with guns drawn and ordered him to get on the ground, he raised his hands in the air. Officer Palacio "[g]ave him more commands, and he still refused to comply." Officer Reed likewise told I.H. to get on the ground and heard "other officers telling him to get on the ground" as well. Officer Reed believed I.H. was not obeying the officers' commands. After I.H. refused to comply with further orders to get on the ground, he moved his hands towards his torso. Because the officers believed that I.H. was Delgadillo (a murder suspect) who was intentionally not complying with their orders, they pushed him to the ground, then pinned and handcuffed him.

The officers then rolled I.H. over, sat him upright, and shined flashlights in his face.  This is when they realized I.H. was not Delgadillo.  Moments later, while "under the impression" that I.H. was not Delgadillo, Officer Reed asked him if he had any weapons, and he indicated he did in his waistband.  The officers then asked I.H. his name and rolled up his sleeves to check his arms for tattoos that matched the description of Delgadillo's tattoos.[3]

For the reasons outlined above, the officers had probable cause to arrest I.H. because they mistakenly, though reasonably, believed he was Delgadillo.  The question is the extent to which that probable cause allowed the officers to detain, question, and search I.H. after they confirmed that he was not Delgadillo.  (See *People v. Espino* (2016) 247 Cal.App.4th 746, 760-762 (*Espino*).)

*Espino*, *supra*, 247 Cal.App.4th 746, was the first (and appears to be the only) published California decision "addressing the question of whether, or for how long, police may constitutionally keep a person under arrest without a warrant once they discover an arrest is based on a mistake of fact."  There, police officers stopped the defendant for speeding and, during the stop, he consented to a search of his person.  (*Id.* at p. 761.)  The officers found an object in his pocket they believed to be crack cocaine,

---

[3]  I.H. argues Officer Reed asked him if he had weapons after the officers asked his name, checked his arms for tattoos matching the description of Delgadillo's tattoos, and told him to sit on the ground.  I.H. thus contends that Officer Reed asked that question after he "had determined" that I.H. was not Delgadillo.  But Officer Reed testified that he asked the question right after they rolled I.H. over "onto his butt."  Although the record is unclear, the juvenile court permissibly found that Officer Reed asked if I.H. was armed "prior to [] being properly identified."

so the officers handcuffed him. (*Ibid.*) Within minutes, the officers realized the object was a diamond. (*Ibid.*) The officers nonetheless kept the defendant handcuffed, questioned him, and requested and obtained his consent to search his car, where the officers found methamphetamine. (*Ibid.*)

The defendant argued he was no longer lawfully under arrest for drug possession once the officers realized the object was a diamond and, as a result, his consent to the car search was invalid. (*Espino*, *supra*, 247 Cal.App.4th at p. 762.) The *Espino* court agreed. After surveying various federal civil rights cases, the *Espino* court concluded that the officers did not have "a duty to release defendant within seconds of discovering" the mistake underlying his arrest. (*Ibid.*) Instead, the court held, "once probable cause for the arrest ceased to exist, the police incurred a duty to release defendant within a reasonable amount of time." (*Ibid.*) The court explained that probable cause for an arrest based on a mistake of fact ceases to exist when the arresting officer learns "beyond a reasonable doubt that a warrantless arrest was based on error." (*Id.* at p. 761; see also *O'Doan v. Sanford* (9th Cir. 2021) 991 F.3d 1027, 1041 ["[A] 'person may not be arrested, or must be released from arrest, if previously established probable cause has dissipated.'"].)

In the *Espino* defendant's case, "once the police here discovered that the object in defendant's pocket was a diamond, the facts known by the officers no longer supported his arrest for drug possession." (*Espino*, *supra*, 247 Cal.App.4th at p. 764.) The officers, however, "continued to question [the defendant] while he was unlawfully arrested." And

14

because that arrest was illegal, the defendant's subsequent consent to the car search was involuntary and thus invalid. (*Id*. at pp. 762-763.)

Applying *Espino* here, we conclude the officers did not know beyond a reasonable doubt that their arrest of I.H. was based on a mistaken identification until, as the trial court put it, he was "properly identified." Although the arresting officers believed I.H. was not Delgadillo as soon as they shined a flashlight on his face, they took further steps to confirm his identify by asking him his name and rolling his sleeves up to check if he had tattoos on his arms that matched the description of Delgadillo's tattoos. When the officers confirmed that he did not, they knew beyond a reasonable doubt that I.H. was not Delgadillo and that they had arrested the wrong person. At that point, the officers' probable cause to arrest I.H. on the mistaken but reasonable belief that he was Delgadillo ceased to exist. (See *Espino*, *supra*, 247 Cal.App.4th at pp. 364-365.)

Before this occurred, however, Officer Reed asked I.H. if he was armed, and he indicated that he was. At this point, Officer Reed still had probable cause to arrest I.H. and, in turn, to ask him if he was armed to protect the officers' safety. (See *Espino*, *supra*, 247 Cal.App.4th at p. 762; *United States v. Ramirez* (9th Cir. 2024) 98 F.4th 1141, 1144.) This is particularly true given that Officer Reed was not yet certain whether I.H. was Delgadillo, who was wanted for murder and believed to be armed and dangerous. When I.H. indicated he had a weapon in his waistband, Officer Reed was entitled to search for it. (See *United States v. Baker* (4th Cir. 1996) 78 F.3d 135, 138 ["[A] patdown frisk is but one example of how a reasonable protective search may be conducted."].)

We thus agree with the trial court that the officers had probable cause to search I.H. when they discovered the gun in his waistband. As a result, we reject I.H.'s claim that the officers unduly prolonged his detention. (See *People v. Monroe* (1993) 12 Cal.App.4th 1174, 1178; *People v. Delgado* (2018) 27 Cal.App.5th 1092, 1103-1104.) The trial court therefore properly denied I.H.'s motion to suppress.

E. *IAC*

I.H. argues he received IAC because his attorney "failed to request any corrective action" in response to the juvenile court's misallocation of the burden of proof. In his view, his attorney should have asked for a new hearing, "which was the only corrective action that would have adequately addressed" the court's error. We reject his claim of IAC.

To prevail on an IAC claim, the defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 694; accord, *People v. Johnson* (2015) 60 Cal.4th 966, 979-980; see *People v. Mbaabu* (2013) 213 Cal.App.4th 1139, 1148.) A """"reasonable probability"""" is a probability sufficient to undermine confidence in the outcome of the proceeding. (*People v. Mbaabu*, *supra*, at p. 1149; *Strickland v. Washington*, *supra*, at p. 697.) The defendant bears the burden of demonstrating by a preponderance of the evidence that defense counsel's performance

16

was deficient and it resulted in prejudice.  (*People v. Centeno* (2014) 60 Cal.4th 659, 674.)

As outlined above, the juvenile court began the motion to suppress hearing by incorrectly stating that there were two warrants (one for Delgadillo and one for I.H.), so it would treat I.H.'s motion to suppress as one challenging a warrant as unreasonable.  The court thus told the parties that the initial burden was on I.H. to show "why the warrant was unreasonable."

After the second of three witnesses testified, however, the juvenile court stated that it believed it was mistaken, and that "there was not a valid warrant" for I.H.  The court asked the parties to confirm that there was no warrant for I.H., and they confirmed there was not.  Given this effective stipulation, the court explained that it had incorrectly put the burden on the defense, but the court was "making a correction" and putting the burden on the prosecution to justify I.H.'s arrest.  The juvenile court later reaffirmed "it is clear that [the prosecution] bears a burden," and directed the prosecutor to make her closing argument first.  I.H. is thus wrong that the juvenile court had an "unshakeable" belief that there was a warrant for him and thus he bore the burden of proving it was unreasonable.  Although the juvenile court initially placed the burden on I.H., the juvenile court placed the ultimate burden of proof on the prosecution.

I.H. nonetheless claims that the juvenile court's initial misallocation of the burden of proof "compromised" the entire hearing. Because of that initial error, I.H. contends the juvenile court "(1) misallocated the burden of proof; (2) insisted that the minor present his case first; (3) insisted the minor conduct direct examination rather than cross examination of the law enforcement witnesses[4]; and (4) and limited the scope of the minor's examination of the witness based upon its mistaken impression of the scope of the hearing." These errors allegedly deprived I.H. of "all the structural advantages that normally inure to the benefit" of a defendant challenging a warrantless arrest. Thus, in I.H.'s view, the juvenile court "effectively denied" him a proper hearing for challenging a warrantless arrest under section 1538.5, subdivision (a)(1)(A). I.H. therefore contends his attorney should have requested a new hearing to ensure he received a proper hearing with all the corresponding "structural advantages."

On direct appeal, ineffective assistance is established "only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) "[R]arely will an appellate record establish [IAC]." (*People v. Thompson* (2010) 49 Cal.4th 79, 122.) If the record sheds no light on counsel's actions,

---

[4] The first witness, Officer Reyna, was the only witness defendant questioned on direct instead of on cross-examination.

18

the claim must be rejected unless no satisfactory explanation exists or counsel was asked for an explanation and failed to provide one. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.) We will not find IAC "unless there could be no conceivable reason for counsel's acts or omissions." (*People v. Weaver* (2001) 26 Cal.4th 876, 926.)

Defendant's counsel could have had a reasonable tactical reason not to request a new hearing. Given the relatively straightforward facts and testimony, counsel could have reasonably found that she had effectively and thoroughly questioned all three witnesses. Counsel could have rationally concluded that the order in which the parties questioned the first witness did not matter since she had nonetheless elicited everything she needed to elicit from him, even if the court misapplied the burden and restricted the scope of counsel's questioning. Counsel likewise could have reasonably found that, despite the court's initial error, a new hearing was not necessary because the court recognized and corrected the error before the third and final witness.

Thus, regardless of the court's initial error, counsel could have reasonably concluded that she had procured all the evidence she needed before closing argument, which began with the juvenile court confirming that the prosecution bore the initial burden and had to go first. By that point, counsel could have rationally believed that she could make an effective closing argument because the court had all the helpful evidence possible and correctly understood the parties' positions and relative burdens. Counsel thus could have rationally concluded that the juvenile court's initial error with the burden

of proof did not require a new hearing.  Because counsel may have had a "conceivable tactical purpose" for not requesting a new hearing, we reject defendant's IAC claim.

In any event, defendant fails to persuade us that the court's error was prejudicial. Again, the three witnesses' testimony was straightforward and uncomplicated.  All three witnesses testified that, in arresting I.H., they relied on (1) Deputy Koontz's representations that there was a warrant for Delgadillo's arrest, (2) his description of Delgadillo, and (3) his positive identification of I.H. as Delgadillo at the hotel.  As outlined above, we conclude the officers reasonably did so, and thus their arrest of I.H. was lawful.  I.H. fails to explain how a new hearing could have changed the officers' testimony such that we would find otherwise.

Similarly, I.H. fails to explain how a new hearing could change our conclusion that the search was lawful.  As we explained, Officer Reed testified that he asked I.H. if he had any weapons immediately after his apprehension but before the officers had confirmed beyond a reasonable doubt that he was not Delgadillo, which rendered the search of I.H. lawful.  On this record, we fail to see how a new hearing where the juvenile court applied the correct burden of proof from the outset would change Officer Reed's testimony in any material way.

Thus, because defendant fails to show any resulting prejudice from the juvenile court's error, we reject his IAC claim.

## IV.

## DISPOSITION

The judgment is affirmed.

CODRINGTON
J.

We concur:

MILLER
Acting P. J.

MENETREZ
J.

Filed 6/25/26

CERTIFIED FOR PARTIAL PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re I.H., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>I.H.,<br><br>    Defendant and Appellant. | E084852<br><br>(Super. Ct. No. J301714)<br><br>**ORDER GRANTING REQUEST FOR PUBLICATION**<br><br>[NO CHANGE IN JUDGMENT] |

IT IS ORDERED that said opinion be certified for partial publication pursuant to California Rules of Court, rules 8.1105(c)(2), (c)(8) and 8.1110.  The opinion filed in this matter on June 2, 2026, is modified as follows:

On pages 1 and 21 of the opinion, the words "NOT TO BE PUBLISHED IN OFFICIAL REPORTS" are replaced with the words "CERTIFIED FOR PARTIAL PUBLICATION," and those words on page 1 are followed by insertion of the following footnote:

*  Pursuant to California Rules of Court, rules 8.1105(c)(2), (c)(8) and 8.1110, this opinion is certified for publication with the exception of III. B, C, and E.

Except for this modification, the opinion remains unchanged.  This modification does not effect a change in the judgment.

CERTIFIED FOR PARTIAL PUBLICATION

<u>CODRINGTON</u>
J.

We concur:

<u>MILLER</u>
Acting P.J.

<u>MENETREZ</u>
J.